THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN IRPINO, Defendant-Appellant.

Second District No. 83—236

Opinion filed March 22, 1984.

Robert A. Novelle, of Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Thomas A. Briscoe, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

John Irpino, defendant, was convicted after a bench trial in Lake County of the offense of unlawful possession of more than 30 grams of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(a)(2)). He was sentenced to five years in the Department of Corrections. The defendant appeals from his conviction and sentence and raises two issues. First, he argues that the trial court erred in admitting into evidence People's group exhibit No. 1, which consisted of a police department manilla envelope in which a sandwich-sized plastic bag containing a white powdery substance allegedly recovered from between his legs. He contends that the state failed to establish that the contents of this exhibit were actually recovered between his legs rather than the similar bag of alleged cocaine recovered later from the trunk of his car and suppressed on fourth amendment grounds prior to trial, and failed to establish a sufficient chain of custody to dispel the possibility that the contents of this exhibit were subject to contamination, tampering, or alteration. Second, defendant argues that the trial court's imposition of a sentence of imprisonment violated his eighth amendment right to be protected against cruel and

unusual punishment because he is a paraplegic requiring physical rehabilitative therapy unavailable in any Department of Corrections' facility.

Deerfield police officers Webb and Meyer arrested the defendant at approximately 4:30 a.m. on June 20, 1981, after finding him passed out or asleep in the driver's seat of a car stopped 40 feet north of a stop sign in the northbound lane of Apple Tree Lane where it intersects with Arbor Vitae. The car was in drive position with the motor running and the lights on; defendant's foot was on the brake pedal. At that time, a sandwich-sized plastic bag containing a white powdery substance was recovered from between the defendant's legs and was retained by Officer Webb who brought it to the police station and locked it in an empty gun locker.

Later, at the police station where the defendant and his car were brought, Officer Webb and Agent Ross found another similar bag containing a similar substance in the trunk of the defendant's car. On the way to the records room with this second bag, Officer Webb retrieved the first bag which he had earlier recovered. He placed both of these bags on a desk in the records room. The bag found in the trunk of the defendant's car was subsequently suppressed on motion of the defendant and with the State's agreement for a reason not shown in this record. At trial, the defendant objected to the State's attempt to introduce People's group exhibit No. 1, the bag and substance allegedly recovered from between his legs, on the grounds that the State failed to establish sufficient foundation that the contents in this exhibit were indeed recovered from between his legs and not from the trunk of his car, and because of "mysterious" staples and tape on the top of the evidence envelope. Since the basis of the defendant's argument concentrates on contradictions and "untruths" found in the record, the testimony of each officer must be detailed.

Officer Webb testified on direct examination about his recovery of the first bag and its placement and retention in the gun locker, that Agent Ross conducted a field test on the contents of this bag at around 6:40 a.m., that after this test, he relocked the bag in the gun locker and then talked to the defendant about the charges against him. Webb and Ross then searched the car, retrieved the first bag, took it to the records area, and began work on the report and on inventorying the evidence. The bag was inventoried on a form, marked, and placed inside a manilla envelope, which was then sealed and marked, identified at trial as People's exhibit No. 1 for identification. He had written his initials and the date on this envelope. Agent Ross had written her initials and the police case number and exhibit num-

ber on it and placed an inventory sticker on the other side which she earlier had filled out. He noted that the envelope was different from when he had last seen it in that there was writing on the corner by someone else on the side where the sticker had been placed and that the top and bottom of the envelope were sealed with staples and tape. Officer Webb continued that the sealed envelope was then given to Sergeant Skarbala for transportation to the crime lab.

On cross-examination, Officer Webb noted that the envelope was marked police exhibit No. 2. He further stated that no markings were on the bag when it was recovered from the defendant's lap and he could not recall whether he placed any marking on it at that time. At that point, defense counsel then asked him about the recovery of the second bag from the trunk of the defendant's car. Officer Webb admitted that prior to inventorying and identifying the evidence, he was in simultaneous possession of both bags. Nothing in his inventory slip or police report specified where police exhibits Nos. 1 and 2 were recovered. People's group exhibit No. 1 for identification was then opened in court and it was noted that the bag had some writing on it: the date of recovery, the policy case number, Officer Webb's initials, agent Ross' initials, and the notation that this was police exhibit No. 2. He then stated that both bags were before him at a time when neither had been marked.

On redirect examination, Officer Webb explained that after finding the second bag in the trunk in the garage, he held it in his left hand with a large amount of cash ($39,000) he had found and while proceeding to the records room, unlocked the gun locker, took out the first bag and held it in his right hand. In the records room, he placed the first bag on the right side of the desk and the second bag on the left side of the desk. Agent Ross began to write out the envelope labels and placed the bag on the left (second bag) into the first envelope, marked it exhibit No. 1 and sealed it. Then she placed the first bag recovered into another envelope and marked it exhibit No. 2. He identified at trial People's group exhibit No. 2 for identification as police exhibit No. 1. He explained that this envelope was in substantially the same condition as when he had last seen it except that there were staples and tape sealing the bottom and top of the envelope and writing on one corner which he did not recognize. This envelope was opened in court and it was noted that the bag was marked with the police case number and exhibit number and his initials. It was further noted that Officer Meyer had also written on this bag but that Agent Ross had not. He concluded his redirect examination by stating that at all times he was aware of which bag was recovered from each loca-

tion.

On re-cross-examination, Officer Webb admitted that although he earlier said that he had marked police exhibit No. 1, Ross had marked it. He explained that Officer Meyer was in the same room inventorying the $39,000 in cash recovered from the trunk of the defendant's car. He further testified that police exhibit No. 2 (first bag) had been marked as being recovered at 6:45 a.m. and that police exhibit No. 1 was marked as being recovered at 4:27 a.m.

Finally, on re-direct examination, Officer Webb testified that the bags were closed and that nothing spilled out or into one another.

Agent Ross testified that she searched the defendant's car with Officer Webb in the garage, that Webb took the plastic bag found in the trunk and on the way to the records room retrieved the first bag, which she had earlier field tested, brought both of the bags to the records room and placed them on a table. She then filled out a sticker with the pertinent information for the first bag recovered, stuck it on a manilla envelope, and, along with Officer Webb, marked the bag with the police case number and exhibit number, their initials, and the date. She then placed the bag in the envelope and sealed it with staples covered by tape on the top of the envelope. She did not write anything on this seal. She identified People's group exhibit No. 1 for identification as this evidence. She wrote the time recovered based upon information received from Officer Webb. She then repeated the same process with the second plastic bag and identified People's group exhibit No. 2 for identification as this evidence.

On cross-examination, she testified that the first bag recovered was on the right side of the desk and that Officer Webb had handed it to her, she did not reach for it. She explained that she marked it police exhibit No. 2 because she thought it was smaller than the other bag. She said that she made an error in writing the times when each bag was recovered. She testified that both bags were identical, but then when asked whether one of the bags had been in a double bag, she stated that she could not recall. People's exhibit No. 2 for identification contained a plastic bag filled with a white powdery substance inside of another plastic bag.

Sergeant Skarbala testified, over defendant's continuing objection, about testimony concerning the evidence that was suppressed, about his transportation of the two exhibits to the crime lab. He stated that the envelopes were sealed when he received them and that now they were stapled and taped and marked on the ends. He said that there were no staples on the exhibits when he received them from Officer Webb. He handed these envelopes to Irwin Haviland of the crime lab

who wrote on the corners of the envelopes upon receipt.

Irvin Haviland did not testify at trial but Michael Johnson, the crime lab's chief chemist, testified, over defendant's continuing objection, that he removed the envelopes from the narcotics locked locker, that he tested the substances in each bag and determined that People's group exhibit No. 1 contained 119.35 grams of cocaine and that People's group exhibit No. 2 contained 119.18 grams of cocaine, then replaced the bags in the manilla envelopes and sealed the bottoms with staples, tape, and his writing. He testified that he did not put any staples on the top of the envelopes. People's group exhibit No. 2 was in a double plastic bag when he removed it from the envelope. He further stated that there are two keys to the narcotics locker and that he keeps his key in the laboratory. The staples and tape on the top of the envelopes were present when he removed them from the narcotics locker.

The defendant objected to the introduction of these exhibits into evidence, but after argument, the court admitted both of them into evidence. Defendant then moved that the testimony concerning the analysis of the substances be stricken but the court took that question with the final question in the case. The State then rested and defendant moved for a directed finding which the court denied. The defense then rested. After argument, the trial judge stated that he was convinced beyond a reasonable doubt that People's group exhibit No. 1 was the bag recovered from between the defendant's legs and granted the defendant's motion to strike the rest of the testimony concerning People's group exhibit No. 2 because that evidence was not material. He then found defendant guilty beyond a reasonable doubt and entered judgment on that finding.

After the court entered judgment on its finding of defendant's guilt, the defendant suffered an accident in which he dislocated the cervical spine producing a contusion to his spinal cord. He sought to persuade this court that a sentence of imprisonment would constitute cruel and unusual punishment in that his condition required special facilities which are unavailable in the Department of Corrections.

At oral argument, we were informed by the parties that the defendant has been granted executive clemency, which releases him from custody by excusing his incarceration. Therefore, the defendant's arguments on the second issue became moot and need not be addressed.

As to the single remaining issue, Illinois law requires that before real evidence may be admitted at trial, an adequate foundation must be laid which establishes that the item sought to be introduced is the

actual item involved in the alleged offense and that its condition is substantially unchanged. (*People v. Cole* (1975), 29 Ill. App. 3d 369, 379.) Where an item possesses unique and readily identifiable characteristics and its substance is relatively impervious to change, testimony at trial that the item sought to be admitted is the same one recovered and in substantially the same condition as when recovered suffices to establish an adequate foundation. However, if the item is not readily identifiable or if it is susceptible to alteration by tampering or contamination, its chain of custody must be established with sufficient completeness to render it improbable that the original item has either been exchanged, contaminated, or subjected to tampering. (*People v. Winters* (1981), 97 Ill. App. 3d 288, 289, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 465, 102 S. Ct. 1282; *People v. Cole* (1975), 29 Ill. App. 3d 369, 375.) Both methods of laying an adequate foundation need not be used at trial; the character of the item determines which method must be employed. (*People v. Graves* (1982), 107 Ill. App. 3d 449, 454; *People v. Winters* (1981), 97 Ill. App. 3d 288, 289.) Whether to admit physical evidence at trial lies within the discretion of the trial court whos decision will not be reversed on appeal absent an abuse of that discretion. 97 Ill. App. 3d 288, 289.

■■ In the instant case, People's group exhibit No. 1 contained a bag of cocaine which was not readily identifiable and could have easily been subject to tampering, contamination and alteration. Therefore, the State needed to establish a chain of custody sufficiently complete to demonstrate that the bag of cocaine sought to be introduced at trial and analyzed by the chemist was the bag found between the defendant's legs and that it had not been contaminated, altered, or subjected to tampering. (97 Ill. App. 3d 288, 289.) Defendant first claims that the State failed to establish such a chain of custody in that it did not connect the substance analyzed by the crime lab chemist with the substance recovered between the defendant's legs. In this regard, it should be remembered, that since the trial court struck from the record People's group exhibit No. 2 and accompanying testimony concerning the contents of that exhibit, the fact that both bags recovered by police contained cocaine in approximately the same amount cannot be considered.

■■ The defendant focuses upon the period of time in which Officer Webb had both bags in his possession before they were marked and placed in separate envelopes. He notes three contradictions or discrepancies in the record which, according to him, discredit the chain of custody. First, the defendant notes that the first bag recovered was marked police exhibit No. 2 and that the second bag was

marked police exhibit No. 1. Based upon his opinion that the first bag recovered should have been marked police exhibit No. 1, the defendant suggests that People's group exhibit No. 1 did not contain the bag found between his legs. However, Agent Ross explained that she marked the second bag recovered as police exhibit No. 1 because she believed that bag to be larger than the other one. While Officer Webb testified that Agent Ross inadvertently marked the bags in that manner, that testimony does not contradict Agent Ross' explanation of her rationale since those facts would be within her personal knowledge, and not within Officer Webb's knowledge. Furthermore, although the bag marked police exhibit No. 1 may have been in fact smaller than police exhibit No. 2, that error merely demonstrates that Agent Ross was incorrect in *believing* that police exhibit No. 1 was the smaller of the two bags; it does not mean that she falsely testified as to her rationale.

Second, defendant argues that marking the bag allegedly recovered from the trunk as being recovered at 4:27 a.m. and the bag allegedly recovered from the defendant's lap as being recovered at 6:45 a.m. indicates a misidentification. While this discrepancy does lend credence to the defendant's argument, Agent Ross testified that she had made a mistake when she so marked the bags. In finding that People's group exhibit No. 1 was indeed the bag recovered from between defendant's legs, the trial court must have believed this explanation.

Defendant's last observation focuses upon the fact that Officer Meyer, who was with Officer Webb when the defendant was arrested, placed marks on People's group exhibit No. 2, the bag recovered from the trunk, but not the bag which he had recovered. Meyer was never called to testify to explain why he marked that bag. However, while one may assume that the officer recovering evidence should mark the evidence, the record does not set forth police procedure in this regard. Therefore, it would constitute mere speculation to conclude that Officer Meyer's failure to initial the bag he recovered demonstrates a misidentification.

■ Next, defendant argues that there may have been alteration or tampering of People's group exhibit No. 1. In this regard, he notes that no seal was placed on the plastic bags, no witness from the crime lab, especially Irwin Haviland, testified concerning the period of time from when Sergeant Skarabella delivered the evidence to the crime lab and its subsequent examination by Mr. Johnson, and the contradictions in the testimony concerning the presence of staples and tape on the top portion of the envelopes and the fact that one bag was in a

double bag. Defendant's argument, thus, focuses upon the period of time from when the crime lab received the bags to when Mr. Johnson analyzed their contents.

Although contradictions exist in the record concerning when the staples and tape were placed on the top portion of the envelopes sufficient evidence established that Agent Ross had so sealed the envelopes after the plastic bags were placed inside of them. Sergeant Skarbala's testimony that no staples or tape were on the envelopes when he delivered them to the crime lab merely presented the trial court with a question of fact for its resolution. It is within the trial court's function as the trier of fact to determine the credibility of witnesses and the weight to be given their testimony; discrepancies or conflicts in this testimony only affect the weight to be afforded the testimony. (See *People v. Akis* (1976), 63 Ill. 2d 296, 298-99.) Defendant's statement that Johnson described the staples and tape on the top of the envelope as a "resealing" belies the record. Indeed, Johnson testified that he did not know if somebody had opened and resealed the envelope.

The lack of testimony concerning the custody of the evidence after Sergeant Skarbala delivered it to the crime lab and of protective measures taken does not destroy the chain of custody. A sufficient chain of custody does not require every person involved in the chain to testify; nor must the State exclude all possibilities that the article may have been subject to tampering. (*People v. Winters* (1981), 97 Ill. App. 3d 288, 295, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 464, 102 S. Ct. 1282.) Where one link in the chain is missing but testimony describes the condition of the evidence when delivered which matches the description of the evidence when examined, the evidence suffices to establish a continuous chain of custody. (See *People v. Gustowski* (1981), 102 Ill. App. 3d 750, 753; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 674; *cf. People v. Maurice* (1964), 31 Ill. 2d 456, 458.) The State's burden only requires it to demonstrate a reasonable probability that the exhibit has not been changed in any important respect. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903, 909; *People v. Valentin* (1978), 66 Ill. App. 3d 488, 492.) Here, the State demonstrated reasonable protective techniques in that the bags were closed and placed in manilla envelopes which were then sealed (see *People v. Oswald* (1979), 69 Ill. App. 3d 524, 526); while the bags were not sealed in such a manner that their opening would be detectable, the seal on the manilla envelopes served that function. Since no evidence established tampering, alteration, or substitution of the evidence in that the seal on the manilla envelopes had not been broken (the staples

and tape placed on top by Agent Ross), a sufficient chain had been established. See *People v. Tribett* (1981), 98 Ill. App. 3d 663, 674; *People v. Valentin* (1978), 66 Ill. App. 3d 488, 492; see also *People v. Grayson* (1980), 89 Ill. App. 3d 766, 770.

The cases cited by defendant where reversible error existed (see *People v. Maurice* (1964), 31 Ill. 2d 456; *People v. Resketo* (1972), 3 Ill. App. 3d 633; *People v. Woessner* (1971), 132 Ill. App. 2d 58) are inapposite in that in each of those cases a complete breakdown in the chain of custody occurred, creating the clear possibility that the evidence sought to be introduced at trial was altered in some way. Here, on the other hand, only a factual question existed which the trial court resolved by finding that a sufficient chain existed. Therefore, since the trial court's admission of this evidence at trial was not against the manifest weight of the evidence, no abuse of discretion exists and defendant's conviction is affirmed.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.