THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KYLE SLAUGHTER, Defendant-Appellant.

First District (4th Division)   No. 85—2966

Opinion filed November 6, 1986.

James J. Doherty, Public Defender, of Chicago (Margaret M. Drewko, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas Gainer, Bonnie Meyer Sloan, and William J. Hielscher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, Kyle Slaughter, appeals from the order of the circuit court of Cook County that revoked defendant's probation and periodic imprisonment and sentenced him to four years' imprisonment with credit for time already served, based upon defendant's previous plea of guilty to a charge of burglary. (Ill. Rev. Stat. 1983, ch. 38, par. 19—1 (burglary); Ill. Rev. Stat. 1985, ch. 38, pars. 1005—6—3, 1005—6—4, 1005—7—2 (revocation of probation).) The trial court found that defendant violated the terms of his periodic imprisonment when he was found to be in possession of cannabis in the work-release facility to which defendant was assigned. On appeal, defendant contends that because the State did not prove a proper chain of custody of the narcotic once it was alleged to have been taken from defendant's person at the work-release facility, the trial court erroneously admitted into evidence the cannabis offered by the State at the court's revocation hearing.

We reverse and remand with directions.

BACKGROUND

On January 16, 1985, defendant pleaded guilty to a charge of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1) and was sentenced to three years' probation including six months of periodic imprisonment. The trial court's hearing with respect to defendant's alleged possession of cannabis during this period disclosed the following.

Inmates at the correctional facility in question must sign in and present identification to a guard when they first enter the work-release facility. They are required to leave their money with the guard and proceed to the search room where they are strip searched.

Officer Jerry Earnest of the Department of Corrections facility testified that on Saturday, June 29, 1985, he was assigned to the search room of the facility. He strip searched defendant when defendant entered the facility at about 7:15 p.m., and found two hand-rolled cigarettes within the defendant's wallet. Based upon his training and experience as a corrections officer, Earnest believed that the cigarettes looked, felt, and smelled like marijuana.

Earnest then placed defendant in a detention room and prepared a report of the incident. He testified that he placed the two cigarettes inside an envelope and "dropped" them and a copy of his report in

the correctional facility safe. Earnest stated that the safe was of a type that locked with a key and that two persons, the supervising lieutenant and the accountant for the facility, had a key to the safe. Earnest stated that he did not see the cigarettes again, did not take the evidence out of the safe, and was not present when the items were transported and presented to the trial court the following Monday, July 1, 1985.

The parties stipulated that if Assistant State's Attorney Patrick Quinn were called to testify, he would state that on Monday, July 1, 1985, he was present in the courtroom where the instant hearing was being held and that at that time received a white envelope containing hand-rolled cigarettes from the judge who was presiding in this cause. Quinn would testify that this envelope had been presented to the judge, in the presence of Quinn and counsel for defendant, by an individual who identified himself as an employee of the periodic imprisonment unit of the Cook County department of corrections. After leaving the courtroom that day, Quinn placed this envelope in the safe kept in the State's Attorney's office, and on July 10, 1985, turned it over to an investigator for that office.

The defense also stipulated at the hearing that the cigarettes which Quinn gave to his investigator were submitted to the Illinois Department of Law Enforcement Scientific Services and that laboratory analysis revealed that the cigarettes contained six-tenths of a gram of cannabis.

The record indicates that neither the assistant State's Attorney nor the trial court judge was acquainted with or knew the name of the person who was an employee of the correctional facility and who presented to the trial court the envelope containing the cigarettes.

Defendant testified at the hearing that he had had no knowledge of the cannabis until Earnest, while searching defendant's wallet, stated "What's this here" and showed defendant the two cigarettes. Defendant stated that he told Earnest that the cigarettes were not in his wallet when he entered the facility.

The trial court determined that the State established a sufficient chain of custody to allow admission into evidence of the two cannabis cigarettes presented by the State at the hearing. The trial court found that defendant had violated the conditions of his work release because he had been in possession of this cannabis when he entered the work-release facility on June 29, 1985. At a subsequent sentencing hearing, the trial court revoked defendant's probation and sentenced him to four years' imprisonment. Defendant's appeal followed.

OPINION

The sole issue presented for our review is whether the State established a continuous chain of custody of the cigarettes allegedly seized from defendant's wallet sufficient to demonstrate that these cigarettes were the same as those submitted for chemical analysis.

■ Real evidence is admissible when an adequate foundation is laid to establish that the item is the one involved in the alleged offense and is substantially unchanged since its seizure by authorities. (*People v. Irpino* (1984), 122 Ill. App. 3d 767, 773, 461 N.E.2d 999.) When the evidence is not readily identifiable or is susceptible to alteration, the State must show a chain of custody of sufficient completeness to render it improbable that the item has been tampered, exchanged, or contaminated. (*People v. Shiflet* (1984), 125 Ill. App. 3d 161, 178, 465 N.E.2d 942, *appeal denied* (1984), 101 Ill. 2d 586.) In order to meet this burden, the State must demonstrate a reasonable probability that the evidence has not been altered or substituted. *People v. Schubert* (1985), 136 Ill. App. 3d 348, 355, 483 N.E.2d 600; *People v. Gustowski* (1981), 102 Ill. App. 3d 750, 753, 430 N.E.2d 317.

Our review of the record establishes that the State failed to show a reasonable probability that the cigarettes could not have been readily changed or substituted between the time they were first discovered by Earnest and later submitted to laboratory analysis. Indeed, there is no question that the procedure employed here to preserve the evidence was, at best, less than optimal. At the trial court's hearing, the State openly acknowledged the laxity displayed in the preservation or inventory of the evidence.

It has been held that "[w]here one link in the chain is missing but testimony describes the condition of the evidence when delivered which matches the description of the evidence when examined, the evidence suffices to establish a continuous chain of custody. [Citations.]" (*People v. Irpino* (1984), 122 Ill. App. 3d 767, 775, 461 N.E.2d 999.) In the case at bar, however, the testimony is wholly inadequate to "match" the description of the envelope into which Earnest placed the cigarettes on Saturday, June 29, and the envelope which was presented to the trial court judge on Monday, July 1. Earnest did not testify to the color, or the size, of the envelope into which he put the cigarettes he found on defendant's person on Saturday. He also did not state that he ever sealed the envelope, marked, labelled, or identified the envelope, or that he inventoried the envelope.

Furthermore, the evidence in the case at bar is insufficient to trace the individuals who did have access to the envelope, or the number of persons who could have had access to it. For example, neither

the trial court judge nor the assistant State's Attorney was acquainted with or knew the name or identity of the person who arrived at the courtroom on Monday, July 1, and presented the envelope containing two cigarettes to the court at that time.

In addition, the record does not establish the degree to which access was restricted to the correctional facility's safe. Earnest stated that he himself "dropped" the envelope into the safe. He also stated that the safe was accessible to two persons, the lieutenant and the facility's accountant. Because Earnest's access to the safe enabled him to drop the envelope into the safe, we cannot determine the degree to which access to the safe was permitted, beyond the two persons Earnest specified at the hearing. Also, although Earnest testified that the safe was of the type which is locked by a key, he did not state that it was locked when he placed his report in the safe, nor was there any testimony regarding when the safe was locked during the period of Saturday, June 29, to Monday, July 1, 1985, nor by whom it was locked, or if it was locked at all.

There is insufficient proof of proper chain of custody of the cigarettes at issue in the case at bar to warrant their admission into evidence at the court's revocation hearing. The record shows that the State presented no testimony to establish that the envelope, in which the correctional facility guard placed the cannabis allegedly taken from defendant's person, was ever identified by the guard at the court's hearing, or that the guard ever sealed, marked, or inventoried it at the correctional facility. The record is also inconclusive with respect to whether access was restricted to the correctional facility's safe in which the guard placed the envelope containing the cannabis. We therefore determine that the State failed to establish a proper chain of custody of the cannabis evidence it presented at the revocation hearing. See *People v. Maurice* (1964), 31 Ill. 2d 456, 457, 202 N.E.2d 480; *People v. Pendleton* (1974), 24 Ill. App. 3d 385, 392-93, 321 N.E.2d 433; *People v. Brown* (1972), 3 Ill. App. 3d 879, 881, 279 N.E.2d 382; *People v. Resketo* (1972), 3 Ill. App. 3d 633, 635, 279 N.E.2d 432; *People v. Woessner* (1971), 132 Ill. App. 2d 58, 62, 268 N.E.2d 508.

Because this evidence was crucial to the State's petition to revoke defendant's probation and periodic imprisonment, we find that defendant was not proved to be in possession of cannabis as alleged by the State. Accordingly, we reverse the trial court's orders revoking defendant's probation and periodic imprisonment and sentencing him to four years' imprisonment for burglary. The cause is remanded with directions that the defendant's sentence of probation and periodic im-

prisonment be reinstated, and that he be given credit for the imprisonment he has served.

Reversed and remanded with directions.

JIGANTI and JOHNSON, JJ., concur.