THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS TERRY, Defendant-Appellant.

First District (6th Division)   No. 1—89—2261

Opinion filed March 28, 1991.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial without a jury, defendant, Louis Terry, was convicted of possession of a controlled substance with intent to deliver, and sentenced to a four-year term. Defendant appeals, alleging that he was not proved guilty beyond a reasonable doubt; that the trial court erred in denying defendant's motion to suppress the evidence; and that defendant should have been allowed to introduce exculpating and prior inconsistent statements of the arresting officer.

The pertinent facts are as follows. Chicago police officer Israel Pacheco, narcotics division, testified that on the night of November 11, 1987, at approximately 11:30 p.m., the dispatcher assigned him and two partners to follow up on a report of narcotics being sold from empty apartments located on the third floor of 4844 W. Walton, Chicago. The officers, dressed in plain clothes, drove to that location without a search warrant.

Upon entering the building, the officers were involved in a narcotics arrest on the first floor. Within 10 minutes, Pacheco proceeded to the third-floor landing while his partners concluded the first-floor arrest.

Pacheco approached the apartment on the right side of the landing. A set of iron gates covered the apartment door. Pacheco testified that he shoved the gates to determine whether the door was locked. As Pacheco pushed his hands through the gates, the apartment door swung open. Pacheco saw a woman, later identified as the apartment tenant, Cynthia Miller, running toward the gates. According to Miller, Pacheco held a gun, informed her that they were the police, and demanded that she open the door. Miller went back to the kitchen, retrieved a key, and unlocked the gates.

Pacheco further testified that upon entering the apartment, he found three or four men in the kitchen, and that he saw defendant exit from the bathroom. Upon observing the police officer, the defendant went back into the bathroom. Pacheco testified that he saw the defendant shaking a clear, plastic bag containing a number of smaller, knotted white packets onto the floor. Pacheco ordered defendant to leave the bathroom.

Pacheco picked up the small packets from the floor and out of the commode. A bucket of water had spilled onto the bathroom floor, causing both the small packets and the empty plastic bag to become wet. Pacheco testified that he counted the bags as he picked them up, and that there were 32 small, knotted packets containing white powder. Pacheco indicated that all the wet bags he recovered were identical and that he suspected that they contained cocaine.

Upon returning to the police station, Pacheco inventoried the packets, but did not recount them because they were so wet that he was afraid they would start to tear. Pacheco inventoried 32 packets, with an estimated weight of eight grams. Pacheco did not make any identifying marks on the large plastic bag containing the 32 smaller packets. Pacheco placed the inventoried plastic bag containing the packets in a brown manila envelope which he sealed and labeled with his name, signature, and star, along with defendant's name and the inventory number. The sealed envelope was then placed inside a safe.

Chicago police department chemist Margaret Kampert conducted an examination of the inventoried narcotics. Kampert testified that after checking the contents of the manila envelope, she concluded that the contents did not match the inventory; rather, Kampert found 42 packets inside a clear plastic bag, as opposed to the 32 packets inventoried by Pacheco. Kampert indicated the weight of evidence as 12.0 grams, conflicting with Pacheco's estimated weight of the evidence as 8.0 grams.

On November 16, 1987, Kampert analyzed the contents of the recovered evidence. Initially, Kampert noted that the outside clear plastic bag containing the 42 smaller packets was wet, and that the inside of the bag was wet with a yellow, uremic substance. Kampert recorded the weight of three individual packets, and performed color and crystal tests. In addition, Kampert performed infrared analysis on one bag. The results of the tests were indicative of cocaine. Kampert sealed the packets in a manila evidence envelope, and submitted it to the department of evidence and recovered property.

On May 12, 1989, Kampert weighed and tested an additional 17 packets of evidence. Kampert performed color tests and infrared analysis on all the packets, and the results were positive for cocaine. Kampert further testified that it was difficult to work with the evidence at that time because the packet contents were dry, crusty, and hard.

Defendant filed a pretrial motion to suppress the evidence, arguing that defendant's search, seizure and arrest were made in violation of the fourth amendment, as the police had no warrant and no exi-

gent circumstances existed to justify the warrantless search. Miller testified on behalf of defendant that she lived and paid rent on the apartment where the police seized the evidence. According to Miller, she invited defendant and his girl friend into her apartment at approximately 6 p.m. Defendant had a couple of drinks and was asleep on the sofa at the time the police arrived at her apartment.

The State objected to defendant's motion on the basis of standing, citing *Rakas v. Illinois* (1987), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, for the proposition that fourth amendment rights are personal rights which another person cannot vicariously assert, and that a person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property cannot claim infringement of his fourth amendment rights. The trial court denied defendant's motion, finding that the rationale of *Rakas* was controlling in this instance, and that defendant lacked standing to challenge the search of Miller's apartment.

On appeal, defendant initially contends that he was not proved guilty beyond a reasonable doubt because the cocaine analyzed by the chemist and introduced at trial did not match the substance seized from the scene of the arrest. Upon our review of the entire record, we must agree that defendant was not proved guilty beyond a reasonable doubt. We need consider only the propriety of the admission of the cocaine into evidence.

Defendant claims that the State failed to prove that the cocaine recovered from the bathroom in Miller's apartment was the same as that introduced at trial. Specifically, defendant argues that the discrepancy in the 32 packets of white powder with an estimated weight of 8 grams recovered at the scene of the arrest and inventoried by Pacheco conflicts with the 42 packets of wet, yellow substance weighing 12 grams analyzed by Kampert and introduced at trial. Defendant also asserts that the State's failure to call the courier who transferred the evidence from the police station to the crime laboratory constitutes a missing link in the chain of custody, further supporting the reasonable probability that the State's evidence was altered, exchanged or tampered with in some way before it was examined by Kampert. Defendant suggests that the cocaine earlier recovered in the first-floor arrest prior to his arrest must have been commingled with the substance recovered from Miller's apartment.

■ Generally, real evidence is admissible when an adequate foundation is laid to establish that the item is the one involved in the alleged offense and is substantially unchanged since its seizure by au-

thorities. (*People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662, citing *People v. Irpino* (1984), 122 Ill. App. 3d 767, 773, 461 N.E.2d 999.) When the evidence is not readily identifiable or is susceptible to alteration, the State must show a chain of custody of sufficient completeness to render it improbable that the item has been tampered with, exchanged, or contaminated. (*People v. Shiflet* (1984), 125 Ill. App. 3d 161, 465 N.E.2d 942.) The State must demonstrate a reasonable probability that the evidence has not been altered or substituted. *People v. Schubert* (1985), 136 Ill. App. 3d 348, 483 N.E.2d 600.

■ In this case, we find that the State failed to meet its burden to show that the evidence has not been altered or substituted. Pacheco inventoried 32 packets with an estimated weight of 8 grams, without any description of its condition. Conversely, when Kampert opened the sealed evidence envelope, she found 42 packets, weighing approximately 12 grams saturated in a yellow uremic substance. This disparity, in itself, casts more than a reasonable doubt that the evidence recovered from Miller's apartment was not the same evidence analyzed by Kampert. Also, the record reveals that the first-floor arrest occurred within 10 minutes of the search and confiscation of the substance in Miller's apartment, lending credence to defendant's suggestion that the substances obtained from both arrests were commingled.

■ In denying defendant's argument that he was not proved guilty because the evidence recovered was not the same evidence introduced at trial, the trial judge stated that Pacheco merely misspoke or miscounted. The statement is not supported by the record.

During direct examination, Pacheco testified:

"As I was picking them up, I was counting them and I remember counting 32 and that's what I inventoried."

On cross-examination, Pacheco testified:

"Q. Officer, you said that when you put this plastic bag, when you put some items in this plastic bag, you put down 32, 32 individual packets, is that correct?

A. On the inventory slip?

Q. Right. So you placed 32 packets in here, is that correct?

A. I remember counting 32 and as I was picking them up and that's the figure I used.

Q. And you put in 32 packets of white powder, isn't that correct?

A. That's correct.

Q. And you also put in 32 packages of white powder, approximate weight, eight grams, is that correct?

A. Correct."

That is not the testimony of a witness who misspoke in stating that he recovered 32 packets. Both as to number of packets and to the difference in weight, it is clear that the State failed to prove that the substance recovered in Miller's apartment was the same as that introduced at trial.

We also note that the State did not provide any detail or testimony regarding the handling and safekeeping of the evidence from the time it left police custody until it was received by Kampert. It has been held that "[w]here one link in the chain is missing but testimony describes the condition of the evidence when delivered which matches the description of the evidence when examined, the evidence suffices to establish a continuous chain of custody." (*People v. Irpino*, 122 Ill. App. 3d at 775, 461 N.E.2d at 1005.) However, the evidence adduced at trial in this case is wholly insufficient to compensate for the missing link in the chain of custody because of the discrepancy in the weight and the number of packets.

We find that admission of the cocaine without positive identification or continuity of possession was error. (*People v. Maurice* (1964), 31 Ill. 2d 456, 202 N.E.2d 480.) Without this evidence, there is no proof that the substance found in Miller's apartment was the same as that tested by the chemist and found to contain cocaine.

Having concluded that defendant was not proved guilty beyond a reasonable doubt, we need not address the merit of defendant's remaining contentions.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

RAKOWSKI, P.J., and LaPORTA, J., concur.