679 N.E.2d 419 (1997)
287 Ill. App.3d 878
223 Ill.Dec. 234
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Brandon GIBSON, Defendant-Appellant.
No. 1-95-3647.
Appellate Court of Illinois, First District, First Division.
April 14, 1997.
Jack O'Malley, State's Attorney County of Cook, Chicago, for Plaintiff-Appellee.
*420 Rita Fry, Public Defender of Cook County, Chicago (Emily Eisner, Assistant Public Defender, of counsel), for Defendant-Appellant.
Justice GALLAGHER delivered the opinion of the court:
On March 14, 1995, defendant was charged by information with two counts of possession of a controlled substance with intent to deliver. Following a bench trial, defendant was acquitted of both charges, but found guilty of possession of a controlled substance, a lesser included offense, and sentenced to a one-year prison term, which was to be served consecutively to an unrelated one-year prison term for possession of a controlled substance. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt.
The evidence introduced at trial established that on February 10, 1995, Chicago police officer James O'Donnell was at 5659 South Racine Avenue in Chicago, investigating a complaint of narcotics sales in the area, when he saw defendant. According to Officer O'Donnell, defendant dropped a "clear plastic bag" while running through a nearby vacant lot. Officer O'Donnell immediately ran to where he saw defendant drop the bag, some 30 to 40 feet away. He found it and noticed that it contained 19 other clear plastic packets, each containing what he believed to be cocaine. Officer O'Donnell arrested defendant several minutes later.
Officer O'Donnell then transported defendant and the evidence to a police station where that evidence was weighed and inventoried. Using a scale at the police station, he estimated the weight of the evidence to be two grams with an attendant street value of $253.28 and recorded those estimates in his arrest report. Thereafter, he assigned that evidence to inventory number 1441897.
Following Officer O'Donnell's testimony, a stipulation was entered into between the parties. It was as follows:
"THE COURT: State, do you have any other witnesses?
[ASSISTANT COOK COUNTY STATE'S ATTORNEY]
* * * [VERYL] GAMBINO: No other witnesses.
THE COURT: Anything else?
MS. GAMBINO: Stipulation.
THE COURT: All right. What is the stipulation?
MS. GAMBINO: The stipulation would be that Inventory 1441897 was tested at the Chicago Crime Lab by Francis Mannison; that the total items received were 20, the total estimated weight was 9.3 grams; that three items were tested and a total weight tested was 1.49 grams of cocaine, crack form.
THE COURT: So stipulated?
MR. FADELL [Assistant Public Defender]: Judge, I'd like to comment on that briefly. I am going to offer a stipulation here. I just want to make clear for the record, it is somewhat of a narrow stipulation.
I will stipulate that there was a substance tested and that the confirmatory test did test positive for 1.49 grams of cocaine, and that an amount, the laboratory worker did receive an amount of 9.3 grams of cocaine.
MS. GAMBINO: Judge, I'll withdraw the part about 20 bags and the estimated total weight. The stipulation I want entered is that Francis Mannison tested three items that weighed a total of 1.49 grams, and that was a confirmatory test for crack cocaine.
THE COURT: So stipulated?
MS. GAMBINO: Because I don't understand Mr. Fadell's
THE COURT: Why don't both sides work it out and let me know?
(A discussion was held off the record.)
THE COURT: Is the stipulation worked out yet?
MR. FADELL: Judge, I am going to stipulate to the original stipulation, which I'll say if it's incorrect, the State can correct me, that there
THE COURT: 9.3 total estimated weight was received?
MR. FADELL: Twenty items.
THE COURT: They were tested, total weight tested was 1.49 grams, tested positive for cocaine.
Is that the agreement?
MR. FADELL: Yes, Judge.

*421 THE COURT: All right. That stipulation will be accepted, spread of record." (Emphasis added.)
Defendant now contends that he was not proved guilty beyond a reasonable doubt, as the evidence seized and inventoried by Officer O'Donnell did not match the evidence later analyzed by Mannison.
Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he has previously stipulated. See People v. Polk, 19 Ill.2d 310, 315, 167 N.E.2d 185 (1960). Here, defendant did stipulate to certain facts at trial. However, defendant does not now attempt to attack or otherwise contradict those specific facts, but rather simply contends that given all of those stipulated facts as well as their plain, natural and ordinary meaning (People v. Joe, 31 Ill.2d 220, 226, 201 N.E.2d 416 (1964)), the State nevertheless failed to establish a sufficiently complete chain of custody. See People v. Maurice, 31 Ill.2d 456, 457-59, 202 N.E.2d 480 (1964).
In resolving a challenge to the sufficiency of the evidence used to convict a defendant, a reviewing court does not reweigh the evidence. See People v. Young, 128 Ill.2d 1, 48-51, 131 Ill.Dec. 86, 538 N.E.2d 461 (1989). Rather, it resolves such a challenge by determining whether, after viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Young, 128 Ill.2d at 48-49, 131 Ill.Dec. 86, 538 N.E.2d 461, citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). Moreover, where evidence is not readily identifiable or is susceptible to alteration, it is also the State's burden to "show a chain of custody of sufficient completeness to render it improbable that the [evidence] has been tampered with, exchanged, or contaminated." People v. Terry, 211 Ill.App.3d 968, 973, 156 Ill.Dec. 310, 570 N.E.2d 786 (1991). Stated somewhat differently, "[t]he State must demonstrate a reasonable probability that the evidence has not been altered or substituted." Terry, 211 Ill.App.3d at 973, 156 Ill.Dec. 310, 570 N.E.2d 786.
In Terry, a report of narcotic sales led Chicago police officer Israel Pacheco and other officers to the first floor of an apartment building where a narcotics-related arrest was made. Terry, 211 Ill.App.3d at 970, 156 Ill.Dec. 310, 570 N.E.2d 786. As that arrest was being concluded, Officer Pacheco removed himself to a third floor apartment in that same building where he subsequently arrested Louis Terry for possession of a controlled substance with intent to deliver. Terry, 211 Ill.App.3d at 970-71, 156 Ill.Dec. 310, 570 N.E.2d 786. Officer Pacheco also seized a clear plastic bag and 32 smaller "knotted white packets" that had been shaken from the bag into a toilet and onto the wet floor of that apartment by Terry. Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786.
Officer Pacheco later inventoried those packets, but did not recount them because they were still wet and, in his mind, likely to tear. Terry, 211 Ill.App.3d at 971, 156 Ill. Dec. 310, 570 N.E.2d 786. Officer Pacheco also estimated the weight of those packets at 8 grams. Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786. Officer Pacheco then placed the larger clear plastic bag and the 32 smaller packets "in a brown manila envelope which he sealed and labeled with his name, signature, and star, along with defendant's name and the inventory number." Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786. That sealed envelope was then placed inside a safe at the police station. Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786. Thereafter, Chicago police department chemist Margaret Kampert examined that inventoried evidence and found that the larger clear plastic bag contained 42 smaller packets, which were wet with a yellow, uremic substance and which weighed approximately 12 grams. Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786.
On appeal, Terry contended that the State had failed to prove that the evidence recovered from that third floor apartment was the same as the evidence introduced against him at trial. Terry, 211 Ill.App.3d at 972, 156 Ill.Dec. 310, 570 N.E.2d 786. Specifically, *422 Terry argued that the discrepancies in weight and number, along with the State's failure to establish a sufficiently complete chain of custody, demonstrated a reasonable probability that the State's evidence was altered prior to Kampert's examination. Terry, 211 Ill.App.3d at 972, 156 Ill.Dec. 310, 570 N.E.2d 786.
The court in Terry agreed, finding that the discrepancies, in and of themselves, cast "more than a reasonable doubt that the evidence recovered from [that third floor apartment] was not the same evidence analyzed by Kampert." Terry, 211 Ill.App.3d at 973, 156 Ill.Dec. 310, 570 N.E.2d 786. Moreover, that court "also note[d] that the State did not provide any detail or testimony regarding the handling and safekeeping of the evidence from the time it left police custody until it was received by Kampert." Terry, 211 Ill. App.3d at 974, 156 Ill.Dec. 310, 570 N.E.2d 786.
Here, Officer O'Donnell, a five-year veteran tactical officer who by his own testimony had made hundreds of narcotics arrests and who was familiar with how to weigh narcotics, unequivocally stated that he weighed the evidence dropped by defendant on a scale in the police station and found it to be approximately 2 grams with an attendant street value of around $253.28. However, the stipulation offered to the trial court estimated the weight of the evidence assigned to inventory number 1441897 to be 9.3 grams. This, as defendant correctly notes, is almost a five-fold increase.
Moreover, the State's attempt at establishing a chain of custody was even more deficient than that found in Terry. Cf. Terry, 211 Ill.App.3d at 971-74, 156 Ill.Dec. 310, 570 N.E.2d 786. Not only was there no evidence regarding the handling and safekeeping of the evidence between the custody of Officer O'Donnell and Mannison, there was also no evidence specifically detailing what procedures Officer O'Donnell himself employed with regard to the safekeeping of that evidence. Cf. Terry, 211 Ill.App.3d at 971, 156 Ill.Dec. 310, 570 N.E.2d 786. Indeed, other than the testimony of Officer O'Donnell that he inventoried the evidence under number 1441897, the only other evidence offered to prove the chain of custody was the stipulation, which merely established that Mannison tested the evidence assigned to inventory number 1441897 and found there to be 20 items weighing a total of 9.3 grams. Cf. Terry, 211 Ill.App.3d at 974, 156 Ill.Dec. 310, 570 N.E.2d 786. A chain of custody requires proof of delivery, presence and safekeeping. People v. Judkins, 10 Ill.2d 445, 448, 140 N.E.2d 663 (1957). The State failed to prove a sufficiently complete chain of custody. See Maurice, 31 Ill.2d at 457-59, 202 N.E.2d 480; cf. People v. Terrile, 86 Ill.App.3d 665, 667, 41 Ill.Dec. 812, 408 N.E.2d 234 (1980); People v. Valentin, 66 Ill.App.3d 488, 492-93, 23 Ill.Dec. 431, 384 N.E.2d 67 (1978); People v. Rutledge, 90 Ill.App.2d 251, 252-53, 232 N.E.2d 521 (1967).
Accordingly, the foregoing break in the chain of custody, coupled with the substantial discrepancies as to the weight of the evidence, lead us to find that the State failed to demonstrate a reasonable probability that the drug evidence used to convict defendant had not been altered or substituted. See Terry, 211 Ill.App.3d at 973-74, 156 Ill.Dec. 310, 570 N.E.2d 786.
We hasten to add that we do not find Officer O'Donnell's testimony, that he asked defendant how he could afford to purchase nine grams of crack cocaine while unemployed, to militate against reversal of defendant's conviction. Rather, we find that testimony to further accentuate the substantial discrepancy surrounding the weight of the evidence.
Also, the State's failure to call any person to explain this discrepancy and its failure to introduce the subject bags at trial compel reversal. This is not, as the State argues, an issue of credibility, but rather is a failure to show a reasonable probability that there had not been alteration or tampering. A nearly five-fold increase in the amount of drugs involved warrants an explanation. This "missing link" in the chain of custody indicates a serious discrepancy in the manner in which the evidence was maintained. See Terry, 211 Ill.App.3d at 974, 156 Ill.Dec. 310, 570 N.E.2d 786.
*423 For the aforementioned reasons, we reverse the judgment of the trial court.
Reversed.
CERDA and GREIMAN, JJ., concur.