*In re* ERIC B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Eric B., a Minor, Respondent-Appellant).

First District (6th Division)   No. 1—03—1155

Opinion filed August 27, 2004.

Michael J. Pelletier and Vicki P. Kouros, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Lorraine M. Lynott, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Respondent Eric B., a minor, was adjudicated delinquent for possession of a controlled substance. He was committed to the Illinois Department of Corrections, Juvenile Division, for an indeterminate sentence. On appeal, respondent challenges the sufficiency of the evidence and contends that the State failed to establish a proper chain of custody over the controlled substance. Respondent also contends that the trial court improperly dismissed his *pro se* posttrial motion alleging ineffective assistance of counsel. For the following reasons, we affirm.

The following facts were adduced at respondent's adjudication hearing. On October 9, 2002, at approximately 9:50 p.m., Chicago police officers Joseph Ferenzi and Bojan were patrolling the area near Madison Street and Long Avenue in Chicago. Officer Ferenzi exited his vehicle and set up a narcotics surveillance in an area where he had made previous narcotics arrests. With an unobstructed view and from about 100 to 150 feet away, Officer Ferenzi observed, on three separate occasions, unknown individuals approach respondent and tender money to him. Respondent then walked along a fence over to a crumpled paper bag on the ground which was about 10 to 15 feet away. Respondent picked up the paper bag, removed a small item and then tendered the item to the individual who had just given him the

money. Officer Ferenzi observed three or four additional people standing near respondent who were not involved in the suspected narcotics transactions.

Officer Ferenzi radioed Officer Bojan and other enforcement officers to detain respondent. Once respondent was detained, Officer Ferenzi directed Officer Bojan, via radio, over to the balled-up piece of paper on the ground. Officer Bojan recovered five tinfoil packets of suspected heroin. Officer Bojan testified that he did not observe any other pieces of paper in the immediate area.

According to Officer Bojan's testimony, the tinfoil packets were in his continuous care and custody until he inventoried them. The officers also recovered $65 during a subsequent custodial search of respondent.

Thereafter, the parties entered the following stipulation in full:

"That Officer Bojan inventoried, recovered contraband under number 10040499, that the chain of custody was at all times properly kept and reserved on record and inventoried under number 1004099 [sic], that Nancy McDonaghs would be qualified to testify as an expert to render an expert opinion within a reasonable degree of scientific certainty in the field of forensic chemistry, that said expert did analyze and weigh the evidence inventoried as indicated above completely employing tests and procedures commonly recognized and accepted in the scientific community for ascertaining the presence of a controlled substance; that the evidence in this case tested positive for heroin, that the total estimated weight of 0.8 grams from the 5 items total weight tested 0.1 gram from 1 item."

Respondent testified at trial, which took place in March 2003, that he was 16 years old. Respondent denied possessing any drugs. According to his version of the events leading up to the arrest, respondent and his friends Derrick Hayes and Lekesha Crawford were walking to a fast-food restaurant when they were approached by two officers. Although the officers eventually allowed Crawford and Hayes to leave, they detained and searched respondent. Respondent explained that his mother had given him the $65 recovered during the search. Respondent testified that he did not know the reason for his arrest until he reached the police station.

Following the close of evidence, the trial court adjudicated respondent delinquent for possession of a controlled substance. The trial court, in announcing its decision, specifically stated that respondent's testimony "makes no sense" and that it found the testimony of Officers Ferenzi and Bojan to be credible. The trial court then sentenced respondent to the juvenile division of the Department of Corrections.

Immediately after the court imposed the sentence, the following colloquy took place between the court, respondent, and defense counsel:

"MINOR RESPONDENT: My brother could have told you.

THE COURT: There was a trial in this case.

MINOR RESPONDENT: I didn't get a chance to call nobody [sic].

THE COURT: You're trying to tell me your lawyer didn't tell you to give her the names of your witnesses?

MINOR RESPONDENT: No, Ma'am."

The court subsequently informed respondent of his appeal rights and instructed him to include all of the "mistakes" in his appeal. The court then proceeded to engage in the following discussion with respondent:

"MINOR RESPONDENT: They put some dope on my case. I got a charge on there I know it's my brother's work. I know for a fact I don't work this type of drug.

THE COURT: I know for a fact you sat right over there at that table while this trial was going on.

MINOR RESPONDENT: I did, but I didn't bring his name up because I know no one was going to believe me.

THE COURT: *** I have a suspicion the record will reflect that I gave [respondent] the opportunity during the course of the trial to get up and get on the witness stand and tell his story. If at that point in time he decided he didn't want to tell on his brother and he rather [sic] take this weight himself, it is not my job to try to talk about what happened between him and his lawyer.

* * *

[DEFENSE COUNSEL]: For the record, if I may, on February 11th when this matter was up before the court this matter was set for trial on March 12. I gave [respondent] a letter that we keep here with a next court date with my number on it. I told him to call me if he had any additional inquiries.

* * *

THE COURT: If the lawyer gave him a letter saying call me with the names of your witnesses he should have done that.

MINOR RESPONDENT: I got that in my pocket.

THE COURT: He got the letter. He has it he says. You heard him. I got that letter in my pocket. The lawyer gave him a letter saying here's my number, call me, give me the names of your witnesses. That's what her job is. Now, if [respondent] clubbed that, that's not gonna be easy to lay at the foot of a lawyer. He was here. He was given the opportunity to testify. Now he says you [sic] didn't want to do that because I didn't want to tell on my brother."

Prior to terminating the proceedings, the trial court again noted that respondent chose not to provide this version of the events when he had the opportunity to do so at trial.

On appeal, respondent first contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to establish a proper chain of custody over the recovered narcotics. The State, however, argues that respondent's failure to raise this issue at trial and in a posttrial motion results in waiver.

■ A defendant is generally precluded from attacking any facts to which he previously stipulated. See *People v. Gibson*, 287 Ill. App. 3d 878, 880 (1997). However, where, as here, a defendant does not attack the specific facts agreed to, but instead argues that the stipulated facts failed to establish a complete chain of custody, the challenge goes to the sufficiency of the evidence. See *People v. Cowans*, 336 Ill. App. 3d 173, 175 (2002). A challenge to the sufficiency of the evidence is not subject to the waiver rule and may be raised for the first time on appeal. *Cowans*, 336 Ill. App. 3d at 176.

The relevant inquiry for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

■ Before the State may admit contraband at trial, it must establish " 'a chain of custody of sufficient completeness to render it improbable that the [evidence] has been tampered with, exchanged, or contaminated.' " *Gibson*, 287 Ill. App. 3d at 881, quoting *People v. Terry*, 211 Ill. App. 3d 968, 973 (1991). The State must also show that the police took reasonable protective measures to ensure that the recovered substance was the same as that tested by the forensic chemist, which includes proof of delivery, presence, and safekeeping. *People v. Moore*, 335 Ill. App. 3d 616, 620 (2002). In the absence of actual evidence of tampering, substitution, or contamination, the State is not required to exclude every possibility of tampering or contamination but, rather, need only show that reasonable measures were employed to protect the evidence from the time that it was seized. *People v. Fox*, 337 Ill. App. 3d 477, 481 (2003), citing *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994).

■ In the instant case, the record establishes that Officer Bojan found five tinfoil packets of suspected heroin in a crumpled paper bag from which respondent had retrieved certain items. Officer Bojan testified that the items remained in his continuous care and custody until he inventoried them under inventory number 10040499. Thereafter, the parties stipulated that "the proper chain of custody

was at all times properly kept." The parties further stipulated that a qualified forensic scientist, Nancy McDonaghs, would testify that she analyzed the five items inventoried under that same inventory number, 10040499, and that the evidence tested positive for heroin. Based on the stipulation and the evidence presented at trial, the State established a proper chain of custody for the controlled substance and the evidence was sufficient to sustain the finding of guilt.

Respondent nevertheless maintains that, because he only stipulated that a proper chain of custody had been maintained up until the time that Officer Bojan inventoried the items, and not thereafter, the State failed to establish a complete chain of custody. The parties here, without qualification, agreed to language that provided that a proper chain of custody was kept "at all times." Had it not been respondent's intention to agree to that fact, it would have been in his best interests not to agree to the stipulation. See *People v. Washington*, 343 Ill. App. 3d 889, 901 (2003), quoting *People v. Rucker*, 346 Ill. App. 3d 873, 892 (2003) (as applied to stipulation of foundation for expert's testimony).

We find that the stipulation means exactly what it said, *i.e.*, "the chain of custody was *at all times* properly kept." (Emphasis added.) In reaching our conclusion, we have considered the cases cited by respondent; however, they are fundamentally different. Unlike the present case, in *Cowans, Gibson, Moore*, and *People v. Lundy*, the stipulations agreed to by the parties did not even mention the chain of custody. See *Cowans*, 336 Ill. App. 3d at 177; *Gibson*, 287 Ill. App. 3d at 879-80; *Moore*, 335 Ill. App. 3d at 619; *People v. Lundy*, 334 Ill. App. 3d 819, 827 (2002).

The stipulation in the instant case not only provided that "the chain of custody was at all times properly kept," but further demonstrated by stipulation that the forensic chemist would be qualified to testify as an expert witness and render an expert opinion. The parties entered the following stipulation in full:

"That Officer Bojan inventoried, recovered contraband under number 10040499, that the chain of custody was at all times properly kept and reserved on record and inventoried under number 1004099 [*sic*], that Nancy McDonaghs would be qualified to testify as an expert to render an expert opinion within a reasonable degree of scientific certainty in the field of forensic chemistry, that said expert did analyze and weigh the evidence inventoried as indicated above completely employing tests and procedures commonly recognized and accepted in the scientific community for ascertaining the presence of a controlled substance; that the evidence in this case tested positive for heroin, that the total estimated weight of 0.8 grams from the 5 items total weight tested 0.1 gram from 1 item."

Unlike the instant case, the stipulation in *Cowans* never mentioned the chain of custody and failed to provide stipulated evidence that the forensic chemist would be qualified to testify as an expert witness. The parties in *Cowans* entered the following stipulation in full:

> " 'Also, that if Maureen Duffy, a forensic scientist employed by the Illinois State Police Division of Forensic Services were to be called, she would testify that on February 7, 2000, she received the following inventory number, 2295494, which contained nine items, and that she tested five of those nine items and that she has determined that—with a reasonable degree of scientific certainty that the five tested items tested positive for 1.2 grams of cocaine.' "

*Cowans*, 336 Ill. App. 3d at 177.

Moreover, in the instant case, the testimony of Officer Bojan provided additional evidence regarding care, custody, and safekeeping demonstrating a proper chain of custody. Officer Bojan testified as follows:

> "[THE STATE]: When you went over to the fence, what did you do?
>
> [THE OFFICER]: I picked up a balled up piece of paper, opened that balled up piece of paper, and found that it contained 5-tin-foil packets of suspect heroin.
>
> [THE STATE]: And, officer, did you observe any other pieces of paper besides that one that you picked up?
>
> [THE OFFICER]: Not in that immediate area, no.
>
> [THE STATE]: And, officer, what if anything did you do after you observed the 5 packets within that piece of paper?
>
> [THE OFFICER]: The minor was placed into custody.
>
> [THE STATE]: And then what did you do?
>
> [THE OFFICER]: As we brought the narcotics back to the 15th district, I inventoried those suspect narcotics.
>
> [THE STATE]: And, officer, was [*sic*] the suspect narcotics in your continuous care and custody from the time you recovered it until the time you inventoried it?
>
> [THE OFFICER]: Yes, it was.
>
> [THE STATE]: And did you, in fact, inventory the suspect narcotics along with the piece of paper under inventory number 10040499?
>
> [THE OFFICER]: Yes."

In *Cowans*, the officer's testimony provided no evidence regarding the continuous care and custody of the suspect narcotics. Officer McCarthy testified in *Cowans* as follows:

> " '[THE STATE]: And did you inventory the nine, clear baggies containing the suspect rock cocaine under inventory number 2295494?
>
> [THE OFFICER]: Yes.' " *Cowans*, 336 Ill. App. 3d at 177.

Unlike the instant case, in *Cowans*, the stipulation and the live testimony failed to even mention the chain of custody. We reject defendant's challenge to the chain of custody. Contrary to defendant's argument that he only stipulated that a proper chain of custody had been maintained up until the time that Officer Bojan inventoried the narcotics, the stipulation provided "the chain of custody was at all times properly kept." The additional testimony of Officer Bojan that the narcotics were in his "continuous care and custody" further supported that stipulation.

■ Respondent next contends on appeal that the trial court failed to conduct an adequate investigation into his *pro se* allegations of ineffective assistance of counsel. Respondent therefore asserts that a remand is necessary so that the trial court may conduct a preliminary investigation of his ineffective assistance claim.

New counsel is not automatically required where a defendant raises allegations of ineffective assistance of counsel by way of a *pro se* posttrial motion. *People v. Munson*, 171 Ill. 2d 158, 199 (1996). Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, new counsel need not be appointed, and the trial court may deny the motion. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). Furthermore, where a trial court's inquiry into the defendant's allegations reveal that they are conclusory, misleading, legally immaterial, and do not present a colorable claim of ineffective assistance of counsel, the court need not conduct further inquiry into the allegations. See *People v. Johnson*, 159 Ill. 2d 97, 128 (1994). Thus, the key concern on review is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. *Johnson*, 159 Ill. 2d at 125.

Where the record here establishes that the trial court elicited the allegation that defense counsel never told respondent to provide her with the names of witnesses (see *People v. Chapman*, 194 Ill. 2d 186, 228-29 (2000)) and further explored the validity of that allegation by discussing the underlying facts of the claim of possible neglect with both respondent and defense counsel (see *Munson*, 171 Ill. 2d at 202-03), a remand is not required. Contrary to respondent's assertion, the trial court here made a significant effort to explore his claim of ineffective assistance of counsel. The record establishes that the court provided respondent with an opportunity to explain the basis for his claim and only after inquiry into that claim with both respondent and defense counsel did the trial court determine that the claim lacked

merit. Notably, the trial court expressly pointed out the fact that respondent had ample opportunity to present his story when he took the stand, and, due to no fault of his counsel, chose not to do so. Accordingly, the trial court conducted a proper inquiry into respondent's claims and did not err in failing to appoint new counsel.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

TULLY and FITZGERALD SMITH, JJ., concur.