SECOND DIVISION

No. 1-07-3245

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 02 CR 30236 |
| | ) | |
| HECTOR CORTEZ, | ) | Honorable |
| | ) | Ricky Jones, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Defendant appeals from his conviction for first degree murder and argues that his sixth amendment right to confront witnesses was violated. For the following reasons, we affirm defendant's conviction.

FACTS

The dead body of Joshua Siguenza, "Tun Tun," was found in Ronan Park in the early morning of July 26, 2002. Defendant was prosecuted for three counts of murder in relation to Tun Tun's death.

Chicago police officer Jeremy Gomez testified that he was the first to arrive on

the scene. He and his partner determined that the victim was dead and waited for the evidence technician. Officer Gomez testified that Ronan Park was known turf of the Lawrence and Kedzie faction of the Latin Kings street gang.

Marie "Vicki" Adame and her sister Vilma "Veronica" testified for the State. Both testified that at the time of the shooting, they were associated with the Latin Kings. On July 25, 2002, they went to the liquor store with Ruby Castillo and purchased liquor. They later met up with Gordo and Tun Tun. They walked to Ronan Park . While they were sitting at a picnic table, Cucuy (Antonio Martinez) and Tetoz (defendant) approached. They got up to walk away. Vicki saw defendant was twirling a gun around. As she walked away, she heard the men arguing and then heard gunshots. She turned and saw sparks near defendant. She heard four or five shots as she ran away. Veronica testified that she did not see defendant with a gun but saw a white t-shirt wrapped around his right hand. When she heard a gunshot, she turned and saw defendant standing on the picnic table, with Martinez beside him, and Tun Tun under the table. Veronica did not see sparks but did hear four or five more shots.

Several days later, Vicki received a call from defendant, who told her to keep the incident to herself. Neither Vicki nor Veronica went to the police to report what they saw. Both were later picked up by police and taken to the police station. There, both Vicki and Veronica identified photographs of defendant and Martinez.

Paulscha Joseph, also know as "Little Smash," testified that he was a former Latin King and became a government informant following an arrest. On October 8,

2

2002, Joseph met with several high ranking members of the Latin Kings, including Antonio Martinez, at a restaurant. Joseph was assigned to dispose of two guns for the gang, one of which was the murder weapon in this case.

On October 15, 2002, Joseph went to Martinez's uncle's house, where Martinez handed over the gun used in this case. In a recorded conversation published to the jury, Joseph asked Martinez who was shot with the gun. Martinez responded, "Tun Tun." Joseph asked Martinez if he was the one who "smoked" him and Martinez responded "Yeah." When Joseph asked why, Martinez responded that he "had problems with this motherfucker." Joseph left with the gun and gave it to federal agents.

On October 17, 2002, Joseph drove defendant home from a gang meeting. During the ride, the conversation turned to Tun Tun's shooting. Joseph recorded the conversation, which was subsequently played for the jury. Joseph asked defendant who "did it" and defendant replied "me, bro" because Tun Tun was "talkin shit." Joseph asked how many times defendant shot Tun Tun and defendant responded "five," not six, shots. Joseph asked defendant "[Y]ou shot him all five times?" and defendant replied, "[Y]eah." Defendant then indicated that he "left him in the park." Shortly after this conversation, defendant and Martinez were arrested. Martinez was charged as a co-defendant in this case with obstruction of justice relating to the gun.

The parties stipulated to a portion of a handwritten statement Martinez made to Assistant State's Attorney Hitt on November 3, 2002. In this statement, Martinez

explained that when Joseph asked who killed Tun Tun, Martinez only told Joseph that he killed Tun Tun because he wanted to be the "big man" and to be "respected" and "feared" by Joseph.

The parties stipulated to the admission of the autopsy photographs and the foundation for three bullets that the medical examiner would testify "that he recovered three bullets from the body of Joshua Siguenza during the examination." Detective Graf later testified that a forensic scientist specializing in firearm identification determined that the bullets recovered from the victim's body were fired from the gun recovered from Martinez. In addition, the autopsy report, including a toxicology report on the victim, was admitted over defendant's objection.

Defendant presented two stipulations. First, the parties stipulated that police officers would testify that Vicki stated that the three girls met with Gordo on the way to the liquor store. The second stipulation stated that Veronica related in her subsequent handwritten statement, that Gordo and Tun Tun were smoking "weed" at the picnic table.

After hearing all of the evidence, the jury found defendant guilty of first degree murder while personally discharging a firearm. Defendant was sentenced to 45 years' imprisonment. It is from this conviction that defendant now appeals.

ANALYSIS

Defendant first contends that his right to confrontation was violated when Antonio Martinez's out-of-court testimonial statements were admitted at trial.

4

Specifically, defendant contends that pursuant to *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), it was improper for the trial court to allow the State to introduce Martinez's handwritten "repudiation" of his prior confession without requiring Martinez to take the stand.

Prior to trial, defendant filed a motion *in limine* to allow Joseph to testify to the hearsay admission Martinez made to him as a statement against penal interest. According to the motion, Joseph collected a gun from Martinez and asked him, "Who got shot with this?" Martinez replied, "Tun Tun." Joseph asked, "You shot Tun Tun?" Martinez responded, "Yeah." The court granted the motion, finding that it was satisfied that the statement "was made on a circumstance that provides considerable assurances of reliability." Defense counsel indicated that he did not intend to call Martinez, even though he would be available to testify, because he may "disavow the statement" and "point to my guy as the shooter."

Later, when the attorneys were in chambers, the court announced that it had another opportunity to look at the statement Martinez made to Joseph and might reconsider its position on the motion *in limine*. Specifically, the court indicated it was concerned whether the term "smoked" would be construed as synonymous with the word "shot." In discussing whether Martinez intended the word "smoked" to mean "killed," the State offered that Martinez gave a handwritten statement to Assistant State's Attorney (ASA) Hitt on November 3, 2002, wherein Martinez stated that he told Joseph that he killed Tun Tun only because he wanted to be the big man, to be

5

respected and feared. After further discussion, the State requested that Martinez's handwritten statement to ASA Hitt be admitted to explain why he made the earlier admission to Joseph. Specifically, the State requested to admit a portion of the handwritten statement of Antonio Martinez that reads:

"Antonio Martinez states that on or about October 11, 2002, Smash did come by his house. He states that Smash came into his apartment to get the gun. He states he gave the gun to Smash. He states Smash asked him, 'who go[t] smoked with the gun?' He states he told Smash that Tune-Tune [sic] got killed with the gun. He states Smash asked him who killed Tune-Tune [sic]? He states he told Smash that he killed Tune-Tune [sic]. He states he told Smash he killed Tune-Tune [sic] only because he wanted to be the big man, and he wanted to be respected and feared by Smash."

Defense counsel asked for some time to think about the State's request. Defense counsel then asked the court, "Is the Court advising me that if I don't agree to that entire portion that counsel read, that the Court will not allow that as evidence?" The court responded: "Well, Counsel, I think I just need to rule - - decide my ruling on the statement. Without that either, I don't think that's necessary, but if you all have an agreement to the contrary, I'll let you all work that out." Defense counsel then responded "I don't have an objection" and that he agreed to "that paragraph." Defense counsel then agreed to stipulate to the admission of Martinez's handwritten statement.

1-07-3245

Defendant now claims that the admission of Martinez's handwritten "repudiation" violated his sixth amendment right to confrontation. U.S. Const., amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the Supreme Court held that the confrontation clause barred out-of-court testimonial statements unless the declarant was unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

The State argues that we need not reach the merits of defendant's claim because defendant has waived this issue where he stipulated to the admission of Martinez's prior statement to ASA Hitt. A criminal defendant may waive, by stipulation, the need to prove all or part of the case that the State has brought against him. *People v. Polk*, 19 Ill. 2d 310, 315 (1960). "[D]efense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy." *People v. Campbell*, 208 Ill. 2d 203, 217 (2003). A defendant is precluded from attacking or opposing any facts to which he has previously stipulated. *People v. Gibson*, 287 Ill. App. 3d 878, 880 (1997).

The State argues that defendant did not object and that counsel's decision to waive defendant's right to confrontation was a matter of trial strategy where the court indicated its reluctance to admit Martinez's statement to Joseph without admitting Martinez's statement to ASA Hitt.

7

Defendant does not dispute that he did not object to counsel's waiver of his right of confrontation. Defendant argues vehemently however, that counsel's decision to waive his right to confront Martinez was not sound trial strategy. Interestingly, defendant does not challenge counsel's effectiveness under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Instead, as appellate counsel indicated at oral argument in this case, defendant argues that counsel's actions need only be considered under *Campbell*, 208 Ill. 2d at 217. *Campbell* requires that counsel's decision to waive defendant's right of confrontation be "legitimate trial tactics or prudent trial strategy." *Campbell*, 208 Ill. 2d at 221.

It is well established that we cannot "get into counsel's head" to determine why he made the decisions he made in determining his strategy. However, we note that counsel told the trial court that his defense was that Martinez shot Tun Tun. Additionally, defense counsel indicated to the court that he had no intention of calling Martinez because he was afraid Martinez would "disavow the statement" and "point to my guy as the shooter." Clearly counsel had a strategy and having Martinez testify, for whatever reason, did not coincide with that strategy. Perhaps Martinez's written statement would do less damage to defendant's case than Martinez testifying from the stand. We cannot say that counsel's decision to stipulate to Martinez's statement was anything other than sound trial strategy. Consequently, we cannot consider defendant's claim on its merits.

1-07-3245

Defendant next argues that the trial court's decision to allow the autopsy report to be admitted over defense counsel's objection, without the State producing its author for cross-examination, violated his right to confront the witnesses against him. U.S. Const., amend. VI;   Ill. Const. 1970, art. I, § 8*; Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

In support, defendant cites *Melendez-Diaz v. Massachusetts*, 557 U.S. __, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009).  In *Melendez-Diaz*, the defendant was charged with distributing and trafficking cocaine.  To prove the substance was cocaine, the prosecution submitted three "certificates of analysis" that showed the weight of the seized bags and that the substance found therein was cocaine.  The certificates were sworn to before a notary public as required by Massachusetts law.  *Melendez-Diaz*, 557 U.S. at __, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531.  Defendant objected to the admission of these certificates at trial, but the court overruled the objection because Massachusetts law allows the use of these certificates as *prima facie* evidence of the analyzed substance's weight and composition.  A jury found the defendant guilty. Defendant challenged his conviction on appeal and argued that the admission of the certificates violated his sixth amendment right.  The appeals court rejected his claim. The state supreme court declined to hear his case.   *Melendez-Diaz*, 557 U.S. at ___, 174 L. Ed. 2d at 321, 129 S. Ct. at 2532.

The United States Supreme Court found the certificates, which were "quite plainly affidavits",  to be "functionally identical to live, in-court testimony, doing

9

1-07-3245

'precisely what a witness does on direct examination.' " *Melendez-Diaz*, 557 U.S. at ___, 174 L. Ed. 2d at 321, 129 S. Ct. at 2532, quoting *Davis v. Washington*, 547 U.S. 813, 830, 165 L. Ed. 2d 224, 242, 126 S. Ct. 2266, 2278 (2006). Because the certificates were considered testimonial under *Crawford*, the prosecution should have been required to call the analysts at trial, absent a showing that the analysts were unavailable to testify at trial and the defendant had a prior opportunity to cross-examine them. *Melendez-Diaz*, 557 U.S. at __, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532. Accordingly, the admission of the certificates as evidence against the defendant was error. *Melendez-Diaz*, 557 U.S. at __, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532.

Defendant suggests that the autopsy report admitted in this case is similar to the certificates admitted in *Melendez-Diaz*. However, defendant overlooks the fact that this court has previously held that autopsy reports are business records and do not implicate *Crawford*. See *People v. Leach*, 391 Ill. App. 3d 161 (2009); *People v. Moore*, 378 Ill. App. 3d 41, 50 (2007); see also *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195-96, 124 S. Ct. at 1367 (business records are, and historically have been, nontestimonal). While both *Leach* and *Moore* predate *Melendez-Diaz*, we are nevertheless unpersuaded that *Melendez-Diaz* upsets our prior holdings. The *Melendez-Diaz* court specifically noted that the analysts "affidavits" did not qualify as traditional or official business records. *Melendez-Diaz*, 557 U.S. at __, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532.

10

1-07-3245

We acknowledge that, despite its finding that the affidavits did not qualify as traditional business records, the *Melendez-Diaz* court did note that even if the affidavits did qualify as traditional or official business records, "their authors would be subject to confrontation nonetheless" because they were "prepared specifically for use at petitioner's trial" and were "testimony against petitioner." *Melendez-Diaz,* 557 U.S. at __, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2538-40. Despite defendant's argument to the contrary, the facts of this case do not support a finding that the autopsy report is subject to *Crawford*.

The certificates at issue in *Melendez-Diaz* were prepared and admitted solely to establish an element of the offense for which defendant was charged and standing trial, *i.e.*, whether the items seized from the defendant were in fact cocaine, and if so, how much cocaine was present. Those facts went directly to the defendant's guilt or innocence. Conversely, the autopsy report in this case was created for the "administration of [the medical examiner's] affairs." *Melendez-Diaz,* 557 U.S. at __, 174 L. Ed. 2d at 321-22, 129 S. Ct. 2538-40. Furthermore, the autopsy report was not admitted to establish or prove some fact at trial and did not lend itself to establishing defendant's guilt or innocence. Defendant's theory at trial was that Martinez shot and killed the victim. The cause and manner of the victim's death were not contested.

Furthermore, even if the admission of the autopsy report without the testimony of the medical examiner was error, it was harmless beyond a reasonable doubt. *People v. Stechly*, 225 Ill. 2d 246, 302 (2007) (*Crawford* violations are subject to a harmless-error

11

1-07-3245

analysis.) Again, defendant did not contest that Tun Tun was shot and killed. Defendant only claimed that he was not the shooter. Despite defendant's assertions, Vicki testified that defendant had a gun in his hand prior to the shooting. In addition, defendant confessed to Joseph that he shot and killed Tun Tun. Therefore, any possible error did not contribute to defendant's conviction.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

1-07-3245

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

HECTOR CORTEZ,

Defendant-Appellant.

---

No. 1-07-3245

Appellate Court of Illinois
First District, Second Division

June 22, 2010

---

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, P.J., and HOFFMAN J., concur.

---

Appeal from the Circuit Court of Cook County.

The Honorable Ricky Jones, Judge Presiding.

---

For APPELLANT, Michael J. Pelletier, Office of the State Appellate Defender (Patricia Unsinn, Deputy Defender, Shawn O'Toole, Assistant Appellate Defender)

For APPELLEE, Anita M. Alvarez, State's Attorney of Cook County (James E. Fitzgerald, Annette N. Collins, Susan R. Schierl Sullivan, Assistant State's Attorneys)