2020 IL App (1st) 171327-U

No. 1-17-1327

Order filed November 12, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 7028 |
| | ) | |
| TONY ROBINSON, | ) | Honorable |
| | ) | Michele McDowell Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State met its burden to prove defendant guilty of delivery of a controlled substance where the circumstances showed that the officers' identification testimony was reliable. Furthermore, defendant was not deprived of effective assistance of trial counsel where counsel did not object to either the admissibility of the tested narcotics based on missing links in the chain of custody or certain remarks made during the State's rebuttal closing argument.

¶ 2    After a jury convicted defendant Tony Robinson of delivery of a controlled substance, the court sentenced him to seven years' imprisonment and three years' mandatory supervised release.

¶ 3    On appeal, defendant argues that this court should reverse his conviction and remand this matter for a new trial because (1) the State failed to prove his guilt beyond a reasonable doubt because the officers' identifications of him as the offender were unreliable and the chain of custody failed to establish that the alleged narcotics the officer bought from defendant and submitted to the lab were the same substances the lab tested and determined to be cocaine, (2) defense counsel was ineffective for failing to object to the admission of the narcotics, and (3) defense counsel failed to object to the State's improper closing argument that shifted the burden of proof and commented on defendant's exercise of his right not to testify.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6    Defendant was charged with one count of delivery of a controlled substance that occurred on September 23, 2013.

¶ 7    At the April 2017 jury trial, Terrence Ross, an investigator of the Cook County Sheriff's Police, testified that on September 23, 2013, he was conducting a long-term, undercover narcotics investigation with officers from Chicago Heights and the FBI where he would either buy illegal drugs or sell fake drugs. About 4:50 p.m., Ross was at a store on 16th Street in Chicago Heights. The store was on the north side of the street, and a vacant lot was east of the store. Ross was wearing plain clothes and driving an unmarked car. It was daylight and the sun was shining.

¶ 8    Ross had parked his car on the north side of the street in front of the store, facing west. He observed two black males standing in front of the store. One of them wore a white t-shirt and

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

"gold-ish yellow pants." Ross had never seen him before and did not know his name. Ross identified him in court as defendant. A van was parked on the same side of the street as Ross's car and just in front of it. Ross observed defendant approach the driver's side of the van, reach his hand inside it, and engage in a hand-to-hand exchange with the driver. Based on his experience, Ross believed that he had observed defendant engage in a narcotics transaction. After the hand-to-hand exchange, defendant walked back to his position in front of the store and counted money while the van drove away.

¶ 9     Ross exited his car and went inside the store. When Ross came back outside, defendant and the other male were still standing in front of the store. Ross asked defendant if he had any "hard," a street name for crack cocaine, and defendant replied that his supply was sold out. Defendant asked the other male if he had any crack, but he replied that he could not get any. Defendant called someone on his phone, said that he needed drugs and hung up. Defendant told Ross the drugs would arrive in a few minutes.

¶ 10     As they waited, defendant and Ross stood within 3 to 5 feet of each other in front of the store and talked. Defendant told Ross that his name was "T-shirt" and he also sold "loud," a street name for cannabis. Defendant entered his phone number into Ross's phone, and they engaged in small talk for about 10-15 minutes. A silver Buick approached from the east and pulled up right behind Ross's car. Defendant told Ross to "come over here," and they walked over to the passenger's side of the Buick.

¶ 11     The passenger's window of the Buick was down, and two black males were sitting inside. The passenger asked, "How many?" and Ross said he needed five. The passenger handed five objects to defendant, Ross handed $50 to the passenger, and defendant handed the five objects to

Ross. Those objects were small clear zip lock bags that each contained an off-white, rocky substance. Defendant told Ross to call him and entered the rear of the Buick, which then drove off.

¶ 12    Ross entered his car, called his investigation team on his phone, and told them he had just purchased drugs from a guy who had introduced himself as "T-shirt." Ross then drove to the Chicago Heights police station, met up with his team and showed them the narcotics he had purchased, and filled out an evidence bag and inventory sheet. Ross called the sheriff police department's front desk and got a unique inventory number for the evidence bag, which was No. 9531-13. Ross wrote on that evidence bag his initials, sheriff's inventory No. 9531-13, defendant's name, a description of the recovered narcotics, and agency case No. 13-181212. Ross then put the five small zip lock bags containing the suspect cocaine in the evidence bag, sealed it and wrote his initials near the seal. After he sealed the evidence bag, it was placed in the recovered property locker at the sheriff's headquarters in Maywood. The inventory sheet Ross completed for the evidence bag included sheriff's inventory No. 9531-13.

¶ 13    Ross testified that he later learned he had written the wrong agency case number on the evidence bag and inventory sheet; the correct agency case number was No. 13-190995. Ross testified, however, that the agency case number did not affect the sheriff's inventory number, which was unique and specific to the actual recovered and inventoried evidence. Ross explained that the wrong agency case number, *i.e.*, No. 13-181212, did not involve defendant. It referred to an earlier investigation where Ross bought crack cocaine from other suspects, took those narcotics to the police facility, and inventoried those drugs, which received a unique sheriff's inventory number. Ross's case report for this earlier investigation listed agency case No. 13-181212 and

suspects Demetrius King and Anita, whose last name was unknown (LNU). Defendant's name was not listed on the case report for this earlier investigation.

¶ 14    At the trial, Ross identified the bag marked as People's Exhibit 1 as the evidence bag containing the five small bags of off-white, rock-like substances of suspect crack cocaine that he bought from defendant on September 23, 2013. Ross explained that he recognized the bag based on his handwriting, other markings, and his initials near the seal of the bag. Ross testified that the items in the evidence bag were in substantially the same condition when he sealed the bag except for a small cut at the bottom of the bag, some additional stickers and writing that did not originate from him, and an empty plastic bag inside the evidence bag. Furthermore, some of the suspect crack cocaine substance was broken into pieces.

¶ 15    Cook County sheriff's officer Comer testified that he was working undercover as part of the same investigation team as Ross. Comer was wearing plain clothes, driving an unmarked car, and providing security and conducting surveillance. He maintained constant communication with the team via a hand-held radio. Comer observed three to five people in front of the store, one of whom Comer identified in court as defendant. Comer drove past the store twice and was approximately 15-20 feet away from defendant when he did so. It was daylight and nothing obstructed Comer's view of defendant. Comer then established a surveillance point about one-half a block west of the store on the south side of the street. His view of the front of the store was unobstructed, and he was using binoculars.

¶ 16    As Comer surveilled the store, he observed Ross park his car on the north side of the street, exit the car and enter the store while defendant stood in front of store. Through his binoculars, Comer saw Ross exit the store and engage in an approximately 10 minute conversation with

defendant. Then a silver Buick pulled up to Ross and defendant. From Comer's location, the driver's side of the Buick was closest to Comer and the passenger's side was closest to the curb. Defendant walked to the front passenger window of the Buick and reached his hand inside, but Comer could not see exactly what defendant was doing at this time. Comer did not see Ross give the pre-recorded $50 to the Buick's passenger. Comer observed that Ross was standing close by defendant and they had an interaction, but Comer did not see defendant give anything to Ross. Comer explained that he could have missed some part of the interaction because he also had to "watch [his] back" at the scene. Comer observed Ross walk to his car and defendant enter the rear passenger side of the Buick, which drove off. Comer met up with his team at a predetermined area, and Ross showed him the five small zip lock bags of suspect crack cocaine that he had purchased from defendant.

¶ 17    Gina Romano, a crime lab forensic scientist, testified as an expert in the field of drug chemistry. She worked in the lab's drug chemistry and toxicology sections, analyzing physical evidence, blood and urine for the presence of controlled substances. She explained the general procedures for law enforcement agencies to submit evidence to the lab, the lab's handling of that evidence, and the testing she had performed on the items marked as People's Exhibit 1.

¶ 18    Romano testified that People's Exhibit 1 was hand-delivered by sheriff's personnel to the lab's evidence custodian, who created a lab submission receipt, assigned that exhibit lab No. 13-4804, Item Three, and locked it in a limited access area at the lab. Romano identified People's Exhibit 1, which bore lab No. 13-4804, her initials, a date, her department information, a sheriff's white inventory sticker, and the lab's yellow sticker, as the evidence bag that she retrieved in a sealed condition from the limited access area on October 18, 2013. Romano took People's

Exhibit 1 to her desk. She compared the exhibit to its lab submission receipt and verified that sheriff's inventory No. 09531-13-1 written on the exhibit matched lab No. 13-4804, Item Three. She opened the bag, emptied its contents and took notes, which indicated the contents were five clear small zip lock bags that each contained a white chunky powder. Using a balance, she determined that one small bag of powder weighed .1 gram. She tested the powder, and the result was positive for cocaine. She put the powder into a clean bag, sealed it, and marked it with her initials and lab No. 13-4804, Item Three. She put the evidence back into the exhibit, which had on it a sheriff's department white sticker that bore sheriff's inventory No. 9531-13. At trial, Romano testified that People's Exhibit 1 was in substantially the same condition as when she last saw it.

¶ 19    Romano acknowledged that two separate items were submitted to the lab under agency case No. 13-181212 on September 24, 2013. Romano explained that an agency might submit several items of evidence under one agency case number, but that lab's evidence custodian assigned a lab number that corresponded to the agency's inventory number and could also assign multiple item numbers to one agency case number. When Romano tested evidence and wrote the results in her lab reports, she concentrated on the lab item number assigned to the inventory number and ensured that they matched.

¶ 20    Romano explained that the agency case number was not important in matching the tested substance to its particular investigation. Instead, the substance was identified by ensuring that the sheriff's inventory number (here, No. 09531-13) matched the lab number (here, 13-4804, Item Three) and the sheriff's white inventory sticker on the exhibit matched the lab's yellow sticker. When Romano did her analysis, she verified that the sheriff agency's submission receipt and the lab submission receipt for Item Three matched the sheriff's inventory number on the white

inventory sticker on the exhibit. Romano knew that the positive cocaine test result for Item Three applied to this case involving defendant because People's Exhibit 1 bore sheriff's inventory No. 09531-13-1 and lab No. 13-4804, Item Three corresponded to that inventory number. Romano also tested lab No. 13-4804, Item Two, which bore the different sheriff's inventory No. 09432-13-1.

¶ 21 Romano was aware that an additional agency case number was added to lab Nos. 13-4804, Item Two and Item Three because a supplemental note in the lab's computer system indicated that the sheriff's department had asked the lab to add agency case No. 13-190995 to both items linked under lab No. 13-4804. It did not matter that both Items Two and Three had the same agency case numbers because the evidence was identified to a particular investigation by ensuring that the information on the white sheriff's inventory sticker on each item matched the yellow lab sticker's item number.

¶ 22 After Romano's testimony, the trial court allowed the State's motion to admit People's Exhibit 1, which was the evidence bag that contained the substances the lab tested and determined to be cocaine. The defense did not object. After the presentation of the State's case in chief, the defense moved the court for a directed verdict, and the court denied that motion.

¶ 23 The defense presented the testimony of Sherry Fleischhauer, the lab's evidence custodian. She testified that she received evidence from many different police agencies, entered that evidence into the lab's computer system, and then placed the evidence in a locked area that was accessible only to other evidence custodians and analysts. When Fleischhauer entered the evidence into the computer system, the system generated a lab submission receipt and assigned a lab number to each piece of evidence.

¶ 24    Under lab No. 13-4804, Fleischhauer received from the Cook County Sheriff's Police and Investigator Ross three pieces of evidence, which all had the same agency case No. 13-181212. Fleischhauer testified the lab No. 13-4804, Item One was submitted to the lab on September 17, 2013, had sheriff's inventory No. 09181-13-1, and listed the name Demetrius King as the suspect. Items Two and Three were both submitted to the lab on September 24, 2013. Item Two listed Demetrius King and Anita LNU as the suspects, whereas Item Three listed Demetrius King, Anita LNU, and defendant as the suspects. Item Two had sheriff's inventory No. 09432-13-1, whereas Item Three had sheriff's inventory No. 09531-13-1.

¶ 25    Three days after Items Two and Three were submitted to the lab, Fleischhauer received a call from Helen O'Connor of the Cook County Sheriff's Police. Fleischhauer saw O'Connor approximately once a week when O'Connor dropped off evidence. O'Connor asked Fleischhauer to add agency case No. 13-190995 to lab No. 13-4804 for both of the items submitted on September 24, 2013, because the matters involved three suspects. Fleischhauer made the change in the lab's computer system. Fleischhauer explained that when O'Connor submitted to the lab People's Exhibit 1, it did not appear damaged and did not have any cuts or tears. Fleischhauer created and initialed the yellow sticker on People's Exhibit 1 that contained the lab case number. Fleischhauer identified People's Exhibit 1 and confirmed that sheriff's inventory No. 09531-13-1, which was not used for any other piece of evidence, was on the submission receipt, the yellow sticker and the evidence bag. After she received the evidence, she put it in a locked cabinet in the drug chemistry section.

¶ 26    Fleischhauer knew that O'Connor delivered People's Exhibit 1 to her on September 24, 2013, because the agency case number and Ross's name were both on the exhibit; the

corresponding form listed Ross's name and defendant's name as the suspect; the unique sheriff's inventory No. 09531-13-1 was on the white bar code sticker that was printed by the sheriff's department and attached to the exhibit; and that inventory number was also written on the exhibit in two places. The white bar code sticker and sheriff's inventory No. 09531-13-1 were on the exhibit and its corresponding form when O'Connor delivered them to Fleischhauer. When Fleischhauer received the exhibit and its corresponding form, she verified that everything matched to ensure that the evidence and its documents were properly connected. Both the exhibit and form listed the date of offense as September 23, 2013. Fleischhauer initialed the form and then created a yellow lab sticker that listed her initials and lab No. 13-4804, Item Three. She attached that sticker to the exact evidence item submitted by the sheriff's department. That yellow lab sticker was still on People's Exhibit 1 at the time of her testimony.

¶ 27    After Fleischhauer's testimony, the trial court denied defendant's motion to admit his defense exhibits because they were hearsay and only used to refresh the witness's memory.

¶ 28    The jury found defendant guilty of delivery of a controlled substance, and he was sentenced to seven years' imprisonment and three years' mandatory supervised relief.

¶ 29                                      II. ANALYSIS

¶ 30                              A. Sufficiency of the Evidence

¶ 31    In reviewing an insufficient evidence claim, a court must consider all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). " '[T]he reviewing court must allow all reasonable inferences from the record in favor of the prosecution.' " *People v. Wheeler*, 226 Ill. 2d 92, 116-17 (2007)

(quoting *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)). It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *Siguenza-Brito*, 235 Ill. 2d at 224. The factfinder is in the best position to view the demeanor of the witnesses and determine their credibility, weigh the evidence and resolve any conflicts therein. *People v. Kidd*, 2014 IL App (1st) 112854, ¶ 27. A reviewing court will not substitute its judgment for that of the factfinder on issues involving the weight of the evidence, the witnesses' credibility, or fact questions. *Siguenza-Brito*, 235 Ill. 2d at 224-25. A reviewing court will not retry a defendant or reverse a conviction unless the evidence is so "improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt" (*People v. Collins*, 214 Ill. 2d 206, 217 (2005)), which occurs only "where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt" (*Cunningham*, 212 Ill. 2d at 280). As recently noted by the Illinois Supreme Court,

> "it is not necessary that the trier of fact find each fact in the chain of circumstances beyond a reasonable doubt. Rather, the trier of fact must find only that the evidence taken together supports a finding of the defendant's guilt beyond a reasonable doubt. [Citation.] Further, the trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. [Citations.] (Internal quotation marks omitted.) *People v. Jackson*, 2020 IL 124112, ¶¶ 70-71.

¶ 32                                  1. Identification Evidence

¶ 33     First, defendant argues that the officers' identifications of him as the offender were unreliable and thus failed to prove his guilt beyond a reasonable doubt. Specifically, defendant argues that (1) the officers did not testify that they were involved in a long-term investigation of multiple suspects and knew who defendant was at the time of the offense, (2) neither officer described or identified defendant prior to their in-court identifications of him at trial, which was held about 3 1/2 years after the offense occurred, and (3) no other evidence linked defendant to the offense.

¶ 34     The statute concerning the offense of delivery of a controlled substance provides, in relevant part, that "it is unlawful for any person knowingly to *** deliver *** a controlled substance." 720 ILCS 570/401 (West 2012). "Delivery" means the actual, constructive, or attempted transfer of a controlled substance from one person to another. *People v. Valen*, 183 Ill. App. 3d 571, 578 (1989).

¶ 35     In a criminal case, the State must prove the identity of the offender beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Identification of the accused by just one eyewitness is sufficient where the witness viewed the accused under circumstances permitting a positive identification. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). Courts consider the totality of the circumstances when determining the reliability of identifications. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Factors considered in assessing that reliability include (1) the witness's opportunity to view the offender at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the offender, (4) the level of certainty shown by the witness at the identification confrontation, and (5) the length of time between the crime and

identification. *Id.* "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *Jackson*, 2020 IL 124112, ¶ 64. Eyewitness testimony is insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 279-80.

¶ 36 According to the record, the trial court denied the State's motion *in limine* to permit Officer Comer to testify that he had prior contacts with defendant and knew defendant at the time of the offense at issue here. Despite the absence of that testimony, the application of the identification reliability factors to the evidence shows that the officers' identifications of defendant were very reliable.

¶ 37 First, both Ross and Comer had an ample opportunity to view defendant during the commission of the offense. See *People v. Williams*, 143 Ill. App. 3d 658, 662 (1986) (witness's opportunity to view the defendant is considered an important factor in assessing the reliability of an identification; a positive identification does not require the observation to be either of a prolonged nature or made under perfect conditions). Ross viewed defendant during the daylight over an extensive period of time and under very favorable circumstances. Specifically, Ross parked in front of the store where defendant was standing and watched him conduct a hand-to-hand transaction with someone in a nearby van and then count money. Shortly thereafter, Ross stood within an arm's length of defendant and asked to buy crack cocaine. Then Ross and defendant had a face-to-face conversation for about 10 minutes while they waited for the cocaine delivery. Thereafter, Ross and defendant stood next to each other by the Buick during the narcotics transaction. These events and their duration provided Ross with an extensive opportunity to view defendant and reliably identify him as the offender.

¶ 38    Comer also had a very good opportunity to view defendant. Comer, from a distance of 15-20 feet, observed defendant standing in front of the store as Comer drove past it twice. It was daylight, and Comer's view was not obstructed. When Comer parked his car half a block away from the store, he had an unobstructed view of defendant and watched him through binoculars. Comer observed Ross and defendant engage in conversation for approximately 10 minutes while they stood in front of the store. Then Comer observed defendant engage in a transaction with Ross after the Buick arrived at the scene. Comer had an ample opportunity to clearly view defendant several times over a prolonged period from short distances and with the aid of binoculars. Furthermore, Comer's testimony about the events during the surveillance was substantially similar to and corroborative of Ross's testimony.

¶ 39    Second, Ross's and Comer's detailed and substantially similar testimony about the events that occurred prior to, during and after the delivery of the cocaine established that they both paid close attention to defendant and his actions. Although Comer did not see an exchange of money or drugs, that was understandable due his position on the other side of the street, closer to the driver's side of the Buick, whereas Ross and defendant were on the passenger's side of that car. Furthermore, Comer explained that he also had to look away at times to "watch [his] back."

¶ 40    Third, Ross's description of defendant as a black male included the details that he wore "gold-ish yellow pants" and a white t-shirt at the time of the offense. See *People v. Robinson*, 206 Ill. App. 3d 1046, 1051 (1990) (reliability of identification not dependent on the physical or facial characteristics of defendant, but on witness's opportunity to observe him). Fourth, both Ross and Comer were unwavering in their identifications and positively identified defendant without any hesitation. See *People v. J.J.*, 2016 IL App (1st) 160379, ¶ 34 (level of certainty factor supported reliability where the witness, who was only 60% sure of her photo array identification,

was "very deliberate" in her identification and her in-court identification was "positive" and "absolute").

¶ 41     Fifth, the length of time between the crime and the in-court identifications of defendant did not significantly detract from the reliability of the officers' identification testimony. See *People v. Rodger*, 53 Ill. 2d 207, 214 (1972) (identification made two years later was reliable). Also, on the day of the offense, Ross wrote defendant's name on the evidence bag exhibit that contained the five small bags of suspect cocaine defendant had delivered to Ross and listed defendant's name on the sheriff's inventory sheet.

¶ 42     Viewing this evidence in the light most favorable to the prosecution, we conclude that the officers' identifications of defendant as the offender were very reliable. Accordingly, we reject defendant's challenge to the sufficiency of this identification evidence.

¶ 43                                        2. Chain of Custody

¶ 44     Next, defendant argues the State failed to prove his guilt beyond a reasonable doubt because the State's insufficient evidence failed to show that the lab tested the suspect crack cocaine Ross allegedly received from defendant where Ross testified that he put the five small bags, each containing an off-white, rocky substance, into only one evidence bag but the lab analyst received two evidence bags, referred to as lab No. 13-4804, Item Two and lab No. 13-4804, Item Three, for testing. According to defendant, Items Two and Three were nearly identical because they were submitted to the lab at the same time and under the same agency case number. Moreover, both Items Two and Three were labeled with Ross's name as the narcotics investigator and the names of Demetrius King and Anita LNU as the suspects.

¶ 45     Defendant acknowledges that the State's witnesses testified that (1) the narcotics linked to defendant were Item Three, which had a different sheriff's inventory number from Item Two and

included defendant's name as a suspect in addition to the names of King and Anita, and (2) Item Three was properly submitted to the lab and tested. Nevertheless, defendant asserts that Item Two could have easily been substituted or mislabeled based on Ross's other mistakes in this case and the lack of evidence about how the sheriff's department stored the items in its property lockers, who had access to those lockers, and how the items were retrieved from the lockers and delivered to the lab.

¶ 46   In short, defendant contends that the State failed to account for (1) the sheriff's safekeeping of Item Three and its delivery to the lab, and (2) the origin of the nearly identical Item Two. Defendant also asserts that this claim challenges the sufficiency of the evidence rather than its admissibility because there was such a complete breakdown in the chain of custody that no link between defendant and the alleged narcotics was established and thus the State could not prove the delivery element of the offense.

¶ 47   In cases involving controlled substances, the rules of evidence require that before the State can introduce results of chemical testing of a purported controlled substance, the State must provide a foundation for its admission by showing that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist. *People v. Woods*, 214 Ill. 2d 455, 466 (2005). The trial court must determine whether the State has met its "burden to establish a custody chain that is sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution." *Id*. at 467. Once the State has established this *prima facie* case, the burden then shifts to the defendant to show actual evidence of tampering, alteration or substitution. *Id*. at 468.

¶ 48    In the absence of such evidence from the defendant, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination. *Id*. at 467. It is not erroneous to admit evidence even where the chain of custody has a missing link if there was testimony that sufficiently described the condition of the evidence when delivered, which matched the description of the evidence when examined. *Id*. at 467-68. At this point, deficiencies in the chain of custody go to the weight, not the admissibility, of the evidence. *Id*. at 467.

¶ 49    The chain of custody establishes a foundation for such evidence as reliable and admissible; it does not function as proof of the existence of an element of the crime of possession or delivery of a controlled substance. See *id*. at 473. Accordingly, a challenge to the chain of custody does not serve as a challenge to the sufficiency of the evidence to support a conviction and is not exempt from forfeiture. *Id*. Rather, such a challenge is considered an attack on the admissibility of the evidence and is thus subject to the ordinary rules of forfeiture. *Id*.; see also *People v. Blair*, 215 Ill. 2d 427 (2005) (discussing waiver and forfeiture).

¶ 50    The State argues that defendant's claim challenges the State's chain of custody and thus is not a challenge to the sufficiency of the evidence but rather a claim that the State failed to lay an adequate foundation for People's Exhibit 1. The State adds that a challenge to the chain of custody is generally subject to forfeiture because it is an evidentiary matter. We agree with the State.

¶ 51    Defendant has forfeited review of this claim because he failed to specifically object to the admission of People's Exhibit 1 at trial and did not include any claim regarding the chain of custody or the admissibility of People's Exhibit 1 in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Furthermore, defendant has forfeited plain error review of this claim

because he does not argue that plain error occurred. See *People v. Hillier*, 237 Ill. 2d 539, 546-47 (2010) (failure to argue plain error forfeits plain error review); see also *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007) (under the plain-error doctrine, the reviewing court will review unpreserved error when either (1) the evidence is closely balanced, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence).

¶ 52                          B. Ineffective Assistance of Counsel

¶ 53     Defendant argues in the alternative that his trial counsel was ineffective for failing to object to the admission of People's Exhibit 1, the tested narcotics. Defendant asserts that reasonably competent counsel would have been aware of discrepancies among the agency and inventory numbers marked on the items the lab tested. Defendant adds that reasonably competent counsel would have based his trial strategy on the State's failure to link defendant to People's Exhibit 1, and objected to this exhibit. Defendant contends that counsel's failure to object to this exhibit was objectively unreasonable because the State failed to lay a proper foundation for its only piece of real evidence. Defendant argues that counsel could have presented evidence outside the presence of the jury to show the likelihood of the actual substitution of the evidence by showing the possibility of Ross mislabeling the narcotics he recovered from different investigations, a mix-up by the person who delivered the evidence to the lab for testing, or some other tampering. Defendant asserts there is a reasonable probability that the result of the proceeding would have been different if counsel had challenged the admission of People's Exhibit 1.

¶ 54     To establish a claim of ineffective assistance of trial counsel, defendant must show that counsel's performance was deficient and that he suffered prejudice as a result, *i.e.*, there was a reasonable probability that, but for counsel's deficient performance, the trial outcome would have

been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Defendant must satisfy both prongs of the *Strickland* standard. *People v. Taylor*, 2017 IL App (4th) 140060, ¶ 26. The decision whether to object to the admission of evidence is generally a strategic one that may not form the basis of a claim of ineffective assistance. *People v. Perry*, 224 Ill. 2d 312, 344 (2007). Counsel may render ineffective assistance, however, where there was no valid reason for failing to object to inadmissible evidence. *People v. Sanchez*, 404 Ill. App. 3d 15, 18 (2010).

¶ 55    Defendant's ineffective counsel argument rests on the premise that Ross's testimony that defendant delivered five small zip lock bags to him on September 23, 2013, was not linked to Romano's testimony that the substance she tested was cocaine. According to defendant, the evidence supports a conclusion that the substances Ross received in his controlled buy from defendant could have been switched with the similar substances Ross received from an earlier controlled buy involving other offenders. Specifically, defendant states that both investigations for those two separate controlled buys listed the same agency case Nos. 13-181212 and 13-190995; the alleged narcotics from both investigations were recovered by Ross on September 23, 2013, and submitted to the lab on September 24, 2013; and the names Demetrious King and Anita LNU were listed as suspects in both investigations. Defendant also argues that the chain of custody had gaps regarding the safekeeping and handling of the cocaine by the sheriff's office because the State's evidence failed to show how or by whom the suspect crack cocaine was delivered to the sheriff's headquarters, what safekeeping measures the sheriff's department employed for substances received in the controlled buys, or how and by whom the substances were delivered to the lab. Accordingly, defendant contends that his counsel was unreasonable for failing to object to the admissibility of People's Exhibit 1 because these circumstances strongly suggested that the

substances tested by the lab and determined to be cocaine were not the same substances that Ross claimed to have purchased from defendant.

¶ 56    The record does not support defendant's assertion that the State failed to lay a proper foundation for the admission of People's Exhibit 1. The State established a *prima facie* case that the substances the lab received from the sheriff's department and tested were the same substances that Ross received in the controlled buy from defendant because the evidence demonstrated that the sheriff's department employed reasonable measures to protect the evidence from the time that it was seized and it was unlikely that the evidence was subject to tampering or accidental substitution. See *Woods*, 214 Ill. 2d at 466-67.

¶ 57    Specifically, Ross testified that after he bought the five small zip lock bags of suspect crack cocaine from defendant, he returned to his car with the five bags in his possession and drove to the police station to meet his team members. At the station, Ross inventoried the items, which were still in his possession, placed them in an evidence bag and sealed it, and wrote his initials, a description of the items and the unique sheriff's inventory No. 9531-13 on the sealed bag. He also testified that the sealed bag was placed in the recovered property locker at the sheriff's headquarters. Romano and Fleischhauer testified that sheriff's personnel submitted the sealed bag to the lab for testing the day after the controlled buy occurred. When Ross identified the evidence bag at the trial, he testified that it was in substantially the same condition as when he last saw it except for the stickers, markings and minor alterations made by lab.

¶ 58    Although Ross wrote the wrong agency case number on the evidence bag, the State's evidence not only explained Ross's mistake and showed that it was corrected, but also established that Ross's minor error had no effect on the chain of custody because the lab relied on the sheriff's

inventory number when it received, stored and tested the evidence. Furthermore, Fleischhauer testified that the evidence bag did not appear damaged and did not have any cuts or tears when sheriff's personnel submitted it to the lab. Romano also confirmed that the evidence was in a sealed condition when she retrieved it from lab's locked storage area for testing.

¶ 59    Romano's testimony refuted defendant's claim that the cocaine Ross recovered in a different investigation from an earlier controlled buy from other suspects, *i.e.*, lab No. 13-4804, Item Two, could have been mixed-up with or substituted for the substances Ross bought from defendant, *i.e.*, lab No. 13-4804, Item Three. Romano testified that she relied on the unique sheriff's inventory number when she verified the contents of the evidence bags, tested the substances, and ensured that they matched their assigned lab numbers. Lab No. 13-4804, Item Two had sheriff's inventory number 09432-13-1, and Romano testified that she only tested as part of this case the cocaine that was assigned lab No. 13-4804, Item Three, which had sheriff's inventory No. 09531-13-1.

¶ 60    Based on this evidence, the State clearly made a *prima facie* showing that reasonable protective measures were taken to ensure that the cocaine defendant delivered to Ross was the same cocaine that Romano tested and that it was improbable that the cocaine was subject to tampering or substitution. Consequently, the burden shifted to defendant to show actual evidence of tampering or substitution; otherwise, any deficiencies in the chain of custody go to the weight, not the admissibility, of the evidence. See *id.* at 468. Although defense counsel tried to show the existence of actual evidence of alteration or substitution of the cocaine through Fleischhauer's testimony, her testimony established that People's Exhibit 1, all of its corresponding documentation, the sheriff's white inventory sticker, the lab's yellow sticker, and lab No. 13-4804,

Item Three, all listed the unique sheriff's inventory No. 09531-13-1. Thus, there was no actual evidence of tampering or substitution that counsel could point to in order to challenge the State's *prima facie* showing of an adequate chain of custody. Accordingly, the State was not required to exclude every possibility of tampering or contamination, and the admission of People's Exhibit 1 was not erroneous because the witnesses' description of the condition of the evidence when defendant sold it to Ross matched the description of the evidence when the lab examined it, and any deficiencies in the chain of custody went to the weight, not the admissibility of the evidence. See *id*. at 467.

¶ 61    Consequently, defendant has failed to show that counsel's representation was deficient by failing to object to the admission of People's Exhibit 1. See *People v. Smith*, 2014 IL App (1st) 103436, ¶ 65 (counsel is not required to make futile objections to provide effective assistance). During the pre-trial phase, counsel questioned the chain of custody but had no valid basis to challenge the admissibility of the drugs, and the record supports counsel's reasonable strategic decision to instead capitalize on Ross's mistake concerning the agency case number to try to convince the jury to reject the State's claim that defendant sold Ross the drugs.

¶ 62    Finally, defendant's reliance on *People v. Terry*, 211 Ill. App. 3d 968 (1991), and *People v. Gibson*, 287 Ill. App. 3d 878 (1997), is misplaced. In *Terry*, the officer testified that he recovered and inventoried 32 items of contraband with an estimated weight of 8 grams, but the chemist testified that the inventoried evidence consisted of 42 items, which weighed about 12 grams. 211 Ill. App. 3d at 971. The court held that the State failed to establish an adequate chain of custody based on the discrepancies in the number and weight of the evidence items. *Id*. at 973. In *Gibson*, there was no evidence regarding the handling and safekeeping of the evidence, and the amount of

drugs increased five-fold from the time it was seized to the time of the trial. 287 Ill. App. 3d at 882. The court held that, due to the break in the chain of custody and the substantial weight discrepancies about the evidence, the State failed to show that the evidence had not been altered or substituted. *Id*. Unlike in *Terry* and *Gibson*, there was adequate evidence here about the handling and safekeeping of the cocaine during the chain of custody. Both Ross and Romano testified that People's Exhibit 1 was in a sealed condition and in substantially the same condition as when they last saw it, and there was no discrepancy between the number of bags that defendant delivered to Ross and the number of bags contained in People's Exhibit 1when Romano tested it. Unlike *Terry* and *Gibson*, the evidence here established that the State met its *prima facie* burden for the admission of People's Exhibit 1.

¶ 63    We conclude that defendant failed to meet his burden to show that he received deficient representation.

¶ 64                                C. Closing Argument

¶ 65    Defendant argues he was denied a fair trial because the prosecutor's remarks during the State's rebuttal closing argument shifted the burden of proof to defendant and improperly commented on his exercise of his right not to testify. According to defendant, the prosecutor argued that the defense should have asked the police officers questions about the identity of the offender and presented evidence to challenge the element of identity. Defendant contends that the prosecutor's improper argument misstated the law by implying that identity was not an issue in this case.

¶ 66    Defendant acknowledges that he forfeited review of these claims by failing to timely object to the State's arguments during the trial. Defendant asks this court to review his claims for plain

error because the evidence was closely balanced. In the alternative, defendant argues that counsel was ineffective for failing to object to the prosecutor's improper remarks.

¶ 67 The plain error doctrine is a narrow and limited exception to the general waiver rule allowing a reviewing court to consider a forfeited issue that affects substantial rights. *People v. Herron*, 215 Ill. 2d 167, 177-79 (2005). Under the plain error doctrine, we may consider a forfeited error when either "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *Id*. at 186-87. Defendant has the burden of persuasion, and the court's first step in conducting a plain error analysis is to determine whether error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). For the reasons that follow, we find that it did not.

¶ 68 The law gives prosecutors wide latitude in closing argument, and they may comment on facts and legitimate inferences that may be drawn therefrom. *People v. Campbell*, 332 Ill. App. 3d 721, 727 (2002). The prosecutor may also respond to comments made by defense counsel. *Id*. In reviewing allegations of prosecutorial misconduct, the arguments of the prosecutor and defense counsel must be examined in their entirety, and allegedly improper comments must be placed in their proper context. *Id*. Although it is reversible error for the prosecution to attempt to shift the burden of proof to the defense, closing remarks that point toward a defendant's failure to submit any evidence that would tend to refute the case against him are proper comments and do not constitute a shifting of the State's burden of proof. *People v. Albanese*, 104 Ill. 2d 504, 522-23 (1984). "A reviewing court will find reversible error only if the defendant demonstrates that the [prosecutor's closing argument] remarks were improper and *** so prejudicial that real justice was denied or the verdict resulted from the error." *Jackson*, 2020 IL 124112, ¶ 83.

¶ 69     According to the record, during closing argument, defense counsel argued that defendant was innocent and did not participate in the controlled buy; the officers' testimony about the controlled buy was not credible because their testimony conflicted and was not corroborated by any video; defendant was arrested 16 months after the controlled buy but the State failed to explain the actions of the police during that time period, the circumstances of defendant's arrest, or whether the police conducted any investigation and looked for the Buick or any witnesses to the controlled buy; and the State needed more evidence than merely the police officers' in-court statements that defendant was guilty because "[j]ust because the police say somebody did something doesn't mean they did it."

¶ 70     During the State's rebuttal, the prosecutor remarked that the defense was focused during the trial on the issue of the chain of custody for the cocaine, challenging whether the drugs admitted into evidence were the same drugs Investigator Ross bought from defendant. Now, during closing argument, the defense seemed to challenge for the first time Investigator Ross's testimony that identified defendant as the offender who had sold Ross the drugs. The prosecutor argued that "all of sudden" the defense argues during closing argument, "by the way[,] if you think they're drugs, then it wasn't my guy. That is the argument. Not a shred of evidence presented, argued to support that. None." The prosecutor argued that the evidence supported the officers' testimony and they testified consistently and credibly that defendant was the offender who sold the drugs.

¶ 71     The record shows that the prosecutor's remarks, when viewed in context, were proper comments on the defense's failure to rebut the evidence against defendant and proper responses to defense counsel's attack on the credibility of the officers and their identification of defendant as the offender. The State did not improperly shift the burden of proof, comment on defendant's

exercise of his right not to testify, or imply that identity was not an element of the offense. We conclude that defendant has failed to meet his burden of showing either error under the plain error doctrine or counsel's deficient performance under defendant's ineffective counsel claim.

¶ 72                             III. CONCLUSION

¶ 73     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 74     Affirmed.